■ SHARON A. NESTLER, Respondent, v THOMAS G. WHITESIDE et al., Appellants.—Mikoll, J. Appeal from an order of the Supreme Court (Brown, J.), entered August 17, 1989 in Saratoga County, which granted plaintiff's motion for summary judgment.

After defendants visited and viewed the home and real property in question, plaintiff, as the seller, and defendant Thomas G. Whiteside, as the purchaser, executed a sales contract on May 24, 1987. The home and real property are located in the Town of Milton, Saratoga County. The contract was prepared by Whiteside's real estate agent, Diane Mullen of Realty USA/Manor Homes, who was also a neighbor of plaintiff. The form used was entitled "Saratoga County Board of Realtors, Inc. Standard Form Contract for Purchase and Sale of Real Estate". The agreed-upon sale price was $65,000 with a $6,500 down payment. The balance was to be financed by a purchase-money mortgage in the amount of $58,500 to be held by plaintiff. The mortgage included interest at 10% per year amortized over a 20-year period with $559.87 payable

monthly and a balloon payment of the balance due after 12 months.

The transaction was closed on August 12, 1987 when defendants executed a note and mortgage. The first monthly payment was to be made on September 1, 1987 and the balloon payment was due on August 1, 1988. Plaintiff acted as her own agent listing the real property through her employer, Buell Realty, Inc. Defendants took possession of the real property and made all the required monthly payments from September 1, 1987 through July 1, 1988, but failed to pay the balloon payment on August 1, 1988.

Defendants, upon an inquiry at the Ballston Spa National Bank (hereinafter the bank) for a mortgage on August 18, 1988, claim that they were informed for the first time that the home was a double-width mobile home and that it was a "1973 Monticello Model 1000" manufactured in 1972 or 1973. Allegedly, defendants had purchased the residence in the belief that it was a modular home and not a mobile home. Apparently, since the residence was a mobile home they were unable to obtain financing from the bank. On August 23, 1988, defendants had a representative from Phoenix Home Brokers, Inc. inspect the home who then concluded that the home purchased was "not a modular home but a mobile home".

Subsequently, plaintiff commenced the instant foreclosure action against defendants. Defendants served an answer containing an affirmative defense and counterclaim based on plaintiff's alleged fraud in that "plaintiff failed to disclose to them that the real property was improved by a double-wide mobile home, and not a modular or stick-built home, as asserted in the Sales Contract between the parties". Defendants further claimed that the deception was not discovered until July 1988 when Whiteside performed plumbing repairs and discovered that it was a mobile home.

After service of a reply and a bill of particulars, plaintiff moved for summary judgment. Supreme Court granted plaintiff's motion and dismissed the answer and counterclaim. This appeal ensued.

The primary issue presented on this appeal is whether Supreme Court properly granted plaintiff's motion for summary judgment dismissing defendants' answer and counterclaim alleging that plaintiff fraudulently induced defendants to enter into a contract of sale and sale of plaintiff's real property. In our view the order should be affirmed. The accuracy of the alleged misrepresentation as to the home

being a manufactured, mobile or modular home was readily available to defendants upon reasonable inquiry and investigation making applicable the rule enunciated in *Danann Realty Corp. v Harris* (5 NY2d 317, 322, quoting *Schumaker v Mather*, 133 NY 590, 596) that: " 'if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentation' ".

The information of whether plaintiff's home was a mobile home or a modular home was readily available to Whiteside, who described himself as having been a "Framing-Siding-Contractor" for 4½ years prior to the execution of the sale contract, president of his own construction company and occupant of his own mobile home in a mobile home park. The case of *Most v Monti* (91 AD2d 606) controls and requires an affirmance. Whiteside possesses the business experience and knowledge to be held to the same standard as the purchasers in *Most v Monti (supra,* at 606-607). The record here clearly establishes that defendants had the ability to discover prior to the closing that the dwelling was a mobile home and not a modular home. Whiteside stated in his affidavit, sworn to August 9, 1989, that he did not look under the home when he viewed it because he was "in good clothes and therefore would not logically remove skirting and crawl under a home that was listed and told to me to be a modular home". Such an excuse is flimsy.

Moreover, the property was described when it was listed for sale as a "well maintained manufactured home in country" having an aluminum, wood exterior. Contrary to Whiteside's sworn statement, the word "modular" does not appear in the listing for the home. Further, the listing also contains a picture of the home and the caveat that the "information is believed correct but not warranted", indicating that plaintiff only had a belief that the home was manufactured. This was not a statement of fact. Whiteside also indicates that he knew an inspection of the underside of plaintiff's home would disclose whether it was a mobile home since he also stated in his affidavit of August 9, 1989 that he learned from repairing his own mobile home that mobile-home heating systems run through the heating ducts and the homes are supported by a steel pier. Significantly, the expert who inspected the dwelling in question at defendants' request reported that among the

things indicating that the home was a mobile home and not a modular home was that the peak or pitch of the roof was lower or flat, a trait similar to all double-width mobile homes. The home also had mobile-home type windows and doors.

Thus, it appears under the circumstances that, as with the purchasers in *Most v Monti (supra,* at 607), defendants here unreasonably failed to investigate the truth of the alleged misrepresentation. Consequently, defendants are not entitled to the implausible finding that Whiteside, an experienced siding contractor and mobile-home owner, in assuming a major proprietary interest in an existing manufactured home and incurring a heavy financial obligation, did so on verbal assurances given him by plaintiff that the home was not a mobile home *(see, supra,* at 606; *see also, Danann Realty Corp. v Harris,* 5 NY2d 317, *supra; New York State Urban Dev. Corp. v Garvey Brownstone Houses,* 98 AD2d 767, 770).

Order affirmed, with costs. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Levine, JJ., concur.