■ 88 BLUE CORPORATION, Respondent, v REISS PLAZA ASSOCIATES, Appellant, et al., Defendant.—Order of the Supreme Court, Bronx County (Bertram Katz, J.), entered on September 12, 1991, which granted plaintiff's motion for summary judgment and denied defendant's cross-motion to strike the complaint, and the judgment of the same court, entered on December 3, 1991, which awarded plaintiff the sum of $175,000 plus interest, costs and disbursements, are unanimously reversed, on the law, and summary judgment dismissing the complaint granted to defendant, with costs and disbursements.

On May 17, 1989, plaintiff 88 Blue Corporation entered into an agreement with defendant Reiss Plaza Associates to purchase a residential building located at 620 Reiss Place in the Bronx for the price of $3.5 million. It was plaintiff's purpose to acquire the premises in order to convert them to cooperative or condominium ownership. In that connection, the contract stated that no offering plan had been filed within the past 18 months and that plaintiff would be accorded access to defendant's books and records as necessary to prepare an offering plan. Paragraph 34 contained a standard clause that: "Purchaser has inspected the premises or caused an inspection thereof to be made on the Purchaser's behalf, and it is agreed and understood that neither seller or any person purporting to act for the Seller has made or now makes any representations as to the physical condition, income, expense, operation or any other matter or thing affecting or relating to the premises, except as herein specifically set forth. Purchaser hereby expressly acknowledges that no representations have been made and the Purchaser further agrees to take the premises 'As Is' and 'Subject To Any And All Violations.' Purchaser agrees that the Seller is not liable or bound in any manner by any financial statements or written agreements or statements, or representations which have been made, and the real estate broker's 'set-ups' or information pertaining to the premises, furnished by a real estate broker, an agent or employee, servant or other persons, unless the same are specifically stated herein. It is understood and agreed that all understandings and agreements heretofore had between the parties hereto, are hereby merged in this agreement which alone fully and completely expresses their agreement, and that same is entered into after full investigation, neither party relying

upon any statement or representations made by the Seller or the Purchaser not embodied in this agreement."

Also relevant to the dispute herein is paragraph 40, which provides that: "All Leases and agreements herein mentioned or copies thereof have been exhibited to and or examined by the Purchaser, his agent or attorney prior to the execution of this contract. The Seller, upon the closing of title, shall assign to the Purchaser the leases affecting the said premises and Purchaser shall assume all obligations thereunder as of the date of closing * * * In the event there is any inconsistency between the terms and conditions set forth in the leases and the rent schedule annexed hereto, the terms and conditions set forth in the leases shall prevail."

A three-page handwritten rent roll, schedule 3, prepared by defendant declared that "[t]o the best of my knowledge the above represents an accurate Rent Roll" and proceeded to list 78 apartments and their rents. However, the sales contract did not represent that all of the units were legally occupied, and, indeed, the attached certificate of occupancy referred to only 76 legal apartments. The certificate of occupancy was again delivered to plaintiff, along with a copy of the title report, twelve days after the contract of sale was executed. There is no indication that the purchaser expressed any objection to the discrepancy in the number of apartments until April 27, 1990, and, indeed, plaintiff continued to make prearranged downpayments through November of 1989. Thus, nearly a year elapsed before plaintiff's counsel wrote to defendant claiming that the disparity in apartments between those specified in schedule 3 and in the certificate of occupancy constituted a material breach of the sales contract and attempted to terminate the agreement, demanding return of the downpayment. Yet, prior to endeavoring to cancel the agreement with defendant, plaintiff, having full knowledge of the discrepancy in question, transacted a resale contract with a third party. It advised the third party that time was of the essence for the closing.

This action was commenced in May of 1990 after defendant refused to release the downpayment. The complaint asserted causes of action for specific performance, breach of contract and a declaratory judgment rescinding the contract and refunding the deposit funds. The Supreme Court, in granting plaintiff's subsequent motion for summary judgment on the breach of contract and rescission claims, concluded that schedule 3 depicted the enumerated apartments as being all legally occupied and that this misrepresentation made it impossible

to co-op the building. The court's determination was in error. As the court explained in *Nottenberg v Walber 985 Co.* (160 AD2d 574, 575), "[a] cause of action for fraud requires an allegation of material fact, misrepresentation, scienter, reliance and damages". There was no misrepresentation of a material fact herein since not only must there be evidence of plaintiff's detrimental reliance on the misrepresentation in question *(Vermeer Owners v Guterman,* 169 AD2d 442, *affd* 78 NY2d 1114), but " '[w]here a party has means available to him for discovering, "by the exercise of ordinary intelligence", the true nature of a transaction he is about to enter into, "he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" *(Schumaker v Mather,* 133 NY 590, 596 [1892])' " *(Vermeer Owners v Guterman, supra,* at 445)

Since the subject sales contract was affixed with both schedule 3 and the certificate of occupancy, the purported discrepancy was evident when plaintiff executed it and, at the very least, should have been apparent shortly thereafter. Consequently, the allegation of misrepresentation is simply insufficient to raise a question of fact *(see, First Inter-County Bank v DeFilippis,* 160 AD2d 288, *lv denied* 77 NY2d 801). The eleven month delay between the time that plaintiff first acquired knowledge of the rental disparity and took any steps to rescind the agreement bars maintenance of this action irrespective of whether the merger and disclaimer clauses contained in paragraphs 34 and 40 of the contract preclude the causes of action asserted herein. Plaintiff's attempt to cancel the agreement, which, coincidentally, did not take place until it had entered into an evidently unconsummated resale arrangement with a third party, is based entirely on the supposition that schedule 3 represented that all 78 apartments in the building were lawfully occupied and that, notwithstanding the inclusion of the certificate of occupancy, plaintiff justifiably relied to its detriment on the information contained in schedule 3 and was damaged thereby.

Acceptance of plaintiff's theory would require acquiescence in its total failure for nearly a year to question the difference between schedule 3 and the certificate of occupancy. Under these circumstances, even were this court to conclude that the sales contract's disclaimer was too general to be given effect, it is highly implausible to believe that an experienced real estate operation such as that of plaintiff, represented by legal counsel, would not examine the documents involved in the transaction and comprehend their significance *(see, Nestler v*

*Whiteside,* 162 AD2d 845). Therefore, not only is plaintiff not entitled to summary judgment, but a search of the record indicates that, on the contrary, it is defendant that should be accorded such relief although not specifically requested *(see, Shubert Found. v 1700 Broadway Co.,* 173 AD2d 126; *Tele-Pac, Inc. v Grainger,* 168 AD2d 11, *lv dismissed* 79 NY2d 822). Concur—Milonas, J. P., Rosenberger, Ellerin and Asch, JJ.