■ STUART SILVER ASSOCIATES, INC., et al., Respondents, v BACO DEVELOPMENT CORP. et al., Defendants, and VICTOR POLITIS et al., Appellants. [665 NYS2d 415] —Order, Supreme Court, New York County (Charles Ramos, J.), entered July 11, 1996, granting defendants Victor Politis and Politis Holdings, Inc. summary judgment dismissing plaintiffs' causes of action for breach of contract, negligence and RICO violations, and denying defendants summary judgment dismissing plaintiffs' causes of action for fraud, breach of fiduciary duty and punitive damages, unanimously modified, on the law, to grant defendants summary judgment dismissing plaintiffs' claims for fraud, breach of fiduciary duty and punitive damages, and otherwise affirmed, without costs.

In 1986, the Baco Development Corp. (Baco) established two partnerships, Baco Wells Associates L.P. (Wells) and Baco Lenox Avenue Associates L.P. (Lenox), for the purpose of rehabilitating and developing two real estate properties in Harlem and converting them into condominiums. Baco Wells Corp. and Baco Development Lenox Avenue, Inc., subsidiaries of Baco, were general partners of the Wells and Lenox partnerships respectively. Politis Holdings, Inc. was also a general partner in both of these partnerships. Defendant Victor Politis, who served as president of both subsidiary corporations, was the 50% owner of defendant Politis Holdings, Inc. (collectively the Politis defendants).

In the fall of 1986, Politis solicited plaintiffs Lorraine Borden and Stuart Silver Associates, Inc. to become limited partners in the Wells and Lenox partnerships.[1] Both plaintiffs had some experience in the business world: Lorraine Borden was the

---

1. The six other limited partners are not parties to this appeal.

president of an advertising agency (many of whose clients were real estate developers), and Stuart Silver was the president and sole shareholder of a corporation that operated an art exhibition consulting service. Both had participated in investment ventures in the past, including some real estate projects. Knowing that the real estate market in New York was booming at that time, they had asked Politis to keep them informed of any real estate investment opportunities.

According to plaintiffs' allegations, Politis told them that they would double their investment and receive a guaranteed 8% return, and that there were no substantial risks associated with the project. Politis denies having made such representations.

Politis furnished plaintiffs with offering materials (prepared by himself and several of the other named defendants) containing estimated costs, expenses, profits and risks. Borden admitted that she neither read these materials nor consulted with her attorney, accountant or financial advisor before investing in the Baco project. Silver read the offering materials but did not consult with his attorney. Neither of the plaintiffs visited the project sites, investigated the Baco corporations' investment history, requested supporting documentation for the financial projections in the project summary, or otherwise conducted further inquiries into the nature of the project and the reliability of the promoter.

In 1986, each plaintiff invested $145,000 and contractually agreed to purchase an interest in the Wells and Lenox partnerships. Later that year, Baco retained appraiser Alfred Schimmel to make a further estimate of the development costs and projected income. Schimmel's report was not given to plaintiffs at that time.

Schimmel's projections differed somewhat from the projections in the prospectus given to plaintiffs. For instance, the prospectus estimated the cost of developing the Wells property to be about $1.1 million, while Schimmel's figure was about $1.5 million. Schimmel also estimated the projected income from the Lenox property to be about $280,000, while the prospectus had anticipated about $424,000.

However, the difference in the two cost estimates for the Wells project may be explained by the fact that the floor space available for development increased from 8,620 to 11,436 square feet between the time of plaintiffs' initial investment and the time of Schimmel's appraisal. Similarly, the Lenox discrepancy may be explained by the fact that Schimmel's calculations for the Lenox property were based on 18,487 square feet,

while the prospectus was based on 20,000 square feet. The number and configuration of units were not finalized when plaintiffs initially invested and changed more than once over the course of this venture.

Construction began in 1987 and plaintiffs signed limited partnership agreements in 1988. Unfortunately, in 1987, the stock market crashed, making real estate ventures such as this far less profitable than anticipated. The venture depended on a construction loan from Citibank for a large part of its financing. Baco's loan agreement with Citibank provided that Citibank would use its own funds, in the form of condominium purchase money loans, to repay the construction loan. Yet, because of the depressed market, it was no longer feasible to market the properties as condominiums. Baco and Citibank failed to arrive at a mutually acceptable modification of the loan agreement, and Baco was forced to surrender title to the Lenox and Wells properties to Citibank in 1994. All the investors, including plaintiffs and defendants, lost their entire investments.

Plaintiffs commenced this action alleging that defendants knew that the projected costs and income figures in the prospectus were false, since the numbers were inconsistent with Schimmel's appraisal. Plaintiffs claim they were defrauded by misrepresentations in the offering materials and by Politis' alleged promise of an 8% return on their investment. The IAS Court granted summary judgment to the Politis defendants on some, but not all, of plaintiffs' claims. For the reasons stated below, we reverse the IAS Court's ruling with respect to plaintiffs' claims of fraud, breach of fiduciary duty and punitive damages, and grant summary judgment to the Politis defendants on those claims.

A party moving for summary judgment must show prima facie entitlement to judgment as a matter of law, providing sufficient material evidence to eliminate any material issues of fact. To defeat the motion, the opposing party must present admissible evidence showing that a triable issue exists (*Zuckerman v City of New York*, 49 NY2d 557, 562).

The elements of a cause of action for fraud are a representation concerning a material fact, falsity of that representation, scienter, reliance and damages (*Nottenberg v Walber 985 Co.*, 160 AD2d 574, 575). Plaintiff must show not only that he actually relied on the misrepresentations, but also that such reliance was reasonable (*CPC Intl. v McKesson Corp.*, 70 NY2d 268, 285). Where a party has the means to discover the true nature of the transaction by the exercise of ordinary intel-

ligence, and fails to make use of those means, he cannot claim justifiable reliance on defendant's misrepresentations (*88 Blue Corp. v Reiss Plaza Assocs.*, 183 AD2d 662, 664).

The parties here disagree as to whether Politis ever promised an 8% return. Moreover, Politis argues that plaintiffs knew or should have known that the figures in the offering materials were merely future projections subject to change as the details of the project changed, not guaranteed figures. Yet, even if we assume that Politis made all of the disputed statements and intended to induce reliance thereupon, plaintiffs have failed to state a fraud claim because they cannot show that their alleged reliance was justified. Plaintiffs were relatively sophisticated investors who should have understood the risks of investing in a real estate venture without conducting a "due diligence" investigation or consulting their lawyers and accountants. In fact, Lorraine Borden did not even read the *prospectus*, the implication being that she entered into this venture based on Politis' alleged oral promises alone. As such reliance is not reasonable, the existence of a dispute as to whether Politis made such promises does not create a triable issue on the fraud claim.

Additionally, the discrepancies between Schimmel's appraisal and the offering materials are legally insufficient to support the inference that the offering materials were intentionally falsified. The discrepancies are largely based on different assumptions about the available square footage at the sites.[2] Schimmel did not give defendants his report until after plaintiffs received the offering materials and made their initial investment. The Schimmel appraisal thus provides no support for plaintiffs' claim that defendants' projections in the offering materials were contradicted by any information in their possession at the time. Since plaintiffs presented no other evidence that the projections were intentionally falsified, there is no triable issue here. For these reasons, the IAS Court should have granted summary judgment to defendants on the fraud claim.

To claim that a business transaction gave rise to a fiduciary relationship, plaintiff must show that defendant had superior expertise or knowledge about some subject and misled plaintiff by false representations concerning that subject (*Citytrust v Atlas Capital Corp.*, 173 AD2d 300, 305). Here, plaintiffs could

2. Whatever the magnitude of the discrepancies, plaintiffs have also failed to show that their loss was due to the allegedly inflated projections rather than to the 1987 crash which made the condominiums completely unmarketable.

easily have obtained background information about the anticipated state of the Harlem real estate market by consulting the legal and financial advisors who had guided their previous investment decisions. Plaintiffs could also have requested supporting documentation for the project summaries, investigated the project site and its existing leases, reviewed the construction contract and asked for more information about the terms and success rate of Baco's other real estate development ventures. While this documentation may have been largely possessed by Politis initially, plaintiffs were not too inexperienced to know what type of information to request. The difference in business expertise between plaintiffs and Politis was not so great as to give him a fiduciary duty to suggest that they perform due diligence before investing.

Even if there were a fiduciary relationship between Politis and plaintiffs, there is no triable issue of fact as to breach of that duty, since plaintiffs have shown no basis for their fraud claim. Although defendants' investment scheme may have turned out to be unwise, the business judgment rule shields them from liability in the absence of bad faith, a conflict of interest or personal bias (*Levine v Levine*, 184 AD2d 53, 59). Similarly, plaintiffs' claim for punitive damages should have been dismissed as it was based on the fraud claim.

As plaintiffs' remaining claims have been dismissed, there is no reason to decide defendants' argument that plaintiffs' recovery should be reduced by the amount of any tax deductions taken by plaintiffs on account of their investment losses. Concur—Rosenberger, J. P., Nardelli, Andrias and Colabella, JJ.