■ CFJ ASSOCIATES OF NEW YORK, INC., Appellant, v HANSON INDUSTRIES et al., Respondents. [711 NYS2d 232] —Rose, J. Appeal from an order of the Supreme Court (Coutant, J.), entered July 12, 1999 in Broome County, which, *inter alia,* denied plaintiff's motion to amend the complaint and granted defendants' cross motion for partial summary judgment dismissing the fraud cause of action in the amended complaint.

This litigation involves a contract for plaintiff's purchase of

certain real property requiring environmental cleanup and the relevant underlying facts are set forth in our decision of an earlier appeal in this action (260 AD2d 917). After this Court's affirmance (*id.*) and following discovery, plaintiff moved to amend its complaint a second time to add the law firm of Bressler, Amery & Ross (hereinafter BAR) as a party defendant, add an additional cause of action alleging professional negligence against defendant Dames & Moore (hereinafter D&M), and add a cause of action under the Federal Racketeer Influenced and Corrupt Organizations Act (hereinafter RICO; *see,* 18 USC § 1961 *et seq.*). Defendants opposed this motion and then moved for partial summary judgment dismissing, *inter alia,* plaintiff's second cause of action in the first amended complaint sounding in fraud.

In a thorough and well-reasoned decision, Supreme Court concluded that plaintiff's second cause of action, alleging that defendants used a false cost estimate of $1,321,850 for cleanup of the property as part of a fraudulent scheme to make plaintiff responsible for a greater share of those costs under the contract of sale, lacked merit because plaintiff could not have reasonably relied on an earlier oral representation that the cleanup would cost approximately $750,000. This determination rested primarily on express provisions of the contract stating that plaintiff was relying on its own experts in assessing the subject property, that defendant Endicott Johnson Corporation (hereinafter EJ) made no representation or warranty regarding the accuracy of information provided regarding the property's environmental characteristics, and that plaintiff had the right to terminate the contract due to higher cleanup costs within a specified time period. Supreme Court also dismissed the amended complaint against D&M because that environmental consulting firm had not been in privity, or a functionally equivalent relationship, with plaintiff. Supreme Court denied plaintiff's motion to amend its complaint by adding the civil RICO claim because, absent fraud, plaintiff could not state a cause of action under RICO. Lastly, plaintiff's motion to add BAR as a defendant was denied, again due to the absence of a potentially meritorious fraud cause of action.

As is relevant on this appeal, the essence of plaintiff's cause of action for fraud is that defendants' actions in allegedly fraudulently concealing the actual estimated cost of the property cleanup induced plaintiff to enter into the contract and thereafter make expenditures to fulfill the contract in reliance

on cost estimates provided by defendants.* An action for common-law fraud lies where one party misrepresents a material fact, knowing it to be false, and another party, relying on the falsehood, suffers an injury as a consequence of the fraudulently induced reliance (*see, Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421; *Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 122). Thus, "[i]n order to establish a cause of action in fraud, plaintiff[ ] must show that defendant[s] misrepresented a material fact, [they] did so knowingly, the misrepresentation was justifiably relied on and some injury or damages resulted" (*Fitch v TMF Sys.*, 272 AD2d 775, 777). Unlike a general merger clause, a specific written disclaimer will vitiate an allegation that one party reasonably relied on alleged misrepresentations of the other party in executing a contract (*see, Citibank v Plapinger*, 66 NY2d 90, 94-95; *Danann Realty Corp. v Harris*, 5 NY2d 317, 320-321; *Long v Fitzgerald*, 240 AD2d 971, 973).

The contract of sale here specifically recited that plaintiff was a "sophisticated purchaser of industrial and commercial real estate", had retained its own environmental experts to review the environmental condition of the property and acknowledged that the property had been previously used for industrial purposes, including the storage of hazardous materials. It also stated that the seller "makes no representation or warranty regarding the accuracy, contents of any documents provided to [plaintiff] under [the applicable environmental] provisions". Most significantly, the contract contained plaintiff's acknowledgment that it would "rely upon its own experts in order to evaluate the environmental condition of the property and in order to make its own determination as to whether the property [was] suitable for [plaintiff's] needs". This specific contract language expressly negates the element of reliance in plaintiff's attempted fraud claim.

---

* The contract provided that EJ, as seller, would be responsible for the total cost of cleanup if the cost estimate prepared by D&M, EJ's environmental consultant, was less than $1 million. If the estimate exceeded $1 million, then EJ had the right to terminate the contract within 10 days of receipt of the estimate and plaintiff had the option to reinstate the contract upon its assumption of cleanup costs exceeding $1 million. Although the estimate ultimately provided set the cost at $1,321,850 and EJ terminated the contract, plaintiff did not serve a reinstatement notice as prescribed by the contract, but rather commenced this litigation. The factual issue of whether EJ waived its right to terminate by failing to either provide a timely environmental report or serve a timely notice of termination precluded summary judgment on defendants' prior motion for dismissal of plaintiff's claim for specific performance (*CFJ Assocs. v Hanson Indus.*, 260 AD2d 917, 918-919, *supra*).

However, even if these contract provisions were not sufficient to defeat its claim of reliance, plaintiff's fraud claim would still fail for lack of justifiable reliance. It is well settled that with regard to a contract for the sale of real property, "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to [it] of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation, [it] must make use of those means, or [it] will not be heard to complain that [it] was induced to enter into the transaction by misrepresentations" (*Schumaker v Mather*, 133 NY 590, 596; *accord, Danann Realty Corp. v Harris, supra,* at 322; *Long v Fitzgerald, supra,* at 973; *Cohen v Colistra*, 233 AD2d 542, 543).

Here, plaintiff was given the right to enter the premises and perform any tests it desired to ascertain the physical characteristics of the property. Plaintiff also had the right, at its "sole and absolute discretion", to terminate the contract "if it [found] the environmental or physical condition of the property unacceptable" during a specified period of time. These contractual rights, coupled with plaintiff's business sophistication and knowledge through its attorney prior to July 24, 1995 that the cleanup could exceed $1 million, belie its claim that defendants' misrepresentations induced it to enter into and continue the contract (*see, Long v Fitzgerald, supra; Nestler v Whiteside*, 162 AD2d 845, 846-847).

Supreme Court also quite correctly dismissed plaintiff's proposed cause of action against D&M because there was no evidence of a relationship approaching that of privity. It is well settled that "before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity" (*Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382; *see, Credit Alliance Corp. v Andersen & Co.*, 65 NY2d 536, 549-550; *New York Assn. for Retarded Children v Keator*, 199 AD2d 921, 923). The terms of the parties' contract in this case again preclude a key element of plaintiff's claim, for the contract provided that the transaction was not to be construed to create any type of relationship between the parties other than that of buyer and seller. Also, as it had already been represented that plaintiff would take measures of its own to assess the property, D&M's report cannot be viewed as being for the sole " 'purpose of inducing action' on the part of

[plaintiff]" (*Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra,* at 383, quoting *Glanzer v Shepard,* 233 NY 236, 239).

Finally, we find that Supreme Court properly denied plaintiff's motion to add a civil RICO claim because the proposed claim did not " 'specify the statements it claim[ed] were false or misleading, give particulars as to the respect in which plaintiff contend[ed] the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements' " as required under the heightened RICO pleading requirements (*McLaughlin v Anderson,* 962 F2d 187, 191, quoting *Cosmas v Hassett,* 886 F2d 8, 11).

We have considered plaintiff's remaining contentions and find them to be without merit.

Crew III, J. P., Peters, Mugglin and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.