■ CFJ Associates of New York, Inc., Respondent-Appellant, v Hanson Industries et al., Appellants-Respondents. [742 NYS2d 433] —Rose, J. (1) Cross appeals from a judgment of the Supreme Court (Coutant, J.), entered January 4, 2001 in Broome County, upon a decision of the court in favor of plaintiff, and (2) appeal from an order of said court (Monserrate, J.), entered August 2, 2001 in Broome County, which, inter alia, denied plaintiff's motion to vacate the judgment entered against it.

As more fully described in this Court's decisions of two prior appeals (274 AD2d 892; 260 AD2d 917), this action involves a

1994 written contract for the purchase of a 27.41-acre former industrial site by plaintiff, a corporation formed to develop it as a shopping mall, from the site's then-owner, defendant Endicott Johnson Corporation (hereinafter EJ).[1] Supreme Court has been required to determine, and this Court to review, the parties' respective contractual rights and responsibilities regarding environmental review and cleanup of the site in light of the contract's provision that if the estimated cleanup costs were in excess of $1,000,000, EJ could terminate the contract by serving written notice within 10 days of receipt of the estimate from its consultant.

EJ originally agreed to provide plaintiff, within 90 days of the contract date, with a Phase II site assessment report exploring specific areas of environmental concern previously identified in a Phase I report prepared solely for EJ's own purposes before entering the contract. While the Phase II report was also to include a plan and cost estimate for cleaning up hazardous materials encountered in the specified areas, it was not intended to provide a plan to render the site suitable for construction of a shopping mall. In March 1996, beyond the contract deadline, EJ provided a Phase II report without a cost estimate. On February 27, 1997, defendants delivered a Phase II report prepared by their environmental consultant, Dames & Moore (hereinafter D&M), with a cleanup plan and cost estimate of $1,321,850, and a termination notice. Rather than exercise its option to reinstate the contract and assume the excess cleanup costs, plaintiff commenced this action alleging breach of contract and fraud, and seeking specific performance.

Following Supreme Court's disposition of various pretrial motions, including dismissal of plaintiff's fraud cause of action, and subsequent appeals to this Court, the remaining causes of action were determined after a nonjury trial. Supreme Court (Coutant, J.) found that defendants had not breached the contract, plaintiff was entitled to specific performance because defendants' notice of termination was untimely, defendants were responsible for the total cost of the cleanup plan, and plaintiff continued to have the right to terminate the contract based on unacceptable environmental conditions. Plaintiff, after further investigation of the site, exercised that right. Defendants moved to vacate the notice of pendency and for a declaration that plaintiff's right to purchase the property had

---

1. Defendants are, or were, owned or controlled by defendant Hanson Industries, a part of Hanson PLC. During corporate restructuring in September 1996, EJ conveyed the subject property, along with assignment of the contract with plaintiff, to defendant MHC, Inc.

terminated. Plaintiff then moved to vacate the judgment on the ground of newly discovered evidence of fraud (CPLR 5015 [a] [2], [3]), and defendants cross-moved for counsel fees. In July 2001, Supreme Court (Monserrate, J.) granted defendants' motion to vacate the notice of pendency, denied plaintiff's motion to vacate the judgment, and denied defendants' cross motion for counsel fees.

Defendants now appeal, as limited by their brief, from that part of the judgment which granted specific performance to plaintiff. Plaintiff appeals from the judgment and also from Supreme Court's order which denied its motion to vacate the judgment. We have consolidated the two appeals and now affirm.

Initially, we disagree with plaintiff's contention that defendants' failure to deliver the Phase II report and cleanup plan within 90 days of the contract date constitutes a breach of the contract. Pursuant to the contract's terms, defendants' delay only served to extend plaintiff's time to use due diligence in investigating the site. As Supreme Court correctly noted, the parties also agreed in February 1996 to toll the contractual deadlines while reserving their respective rights. In a letter to defendant's environmental counsel, plaintiff's counsel stated that "we have agreed that neither side will hold the other in default in connection with the current contract and that the purpose of the present negotiations is to agree upon a revised plan so that the sale of the property can move forward." Throughout protracted meetings and correspondence, plaintiff never indicated that it considered defendant's failure to deliver the Phase II report within 90 days a breach of contract. In November 1996, when negotiation efforts proved fruitless, plaintiff requested a return to the terms of the contract with adjusted deadlines. Accordingly, plaintiff, in writing and by conduct, tolled the 90-day deadline (see, Schenectady Steel Co. v Trimpoli Gen. Constr. Co., 43 AD2d 234, 237, affd 34 NY2d 939).

With regard to the alleged deficiencies in the Phase II report, plaintiff's remedy was the mechanism for resolving objections set forth in the contract itself. Having commenced this action instead of serving a reinstatement notice, plaintiff never availed itself of this recourse. In addition, the contract explicitly recognizes the possibility of further site contamination outside the areas specified by the cleanup plan. The contract also recites that plaintiff agreed to accept the property without regard to the accuracy of studies performed by the seller and that the seller made no representation or warranty

as to the accuracy of the Phase II documents. The contract further provides, "Buyer acknowledges that the Property has previously been used for industrial purposes, including * * * the storage and handling of Hazardous Materials." Plaintiff's own environmental consultant testified at trial that he was reasonably comfortable with the scope of the Phase II report and that the cost estimate was reasonably accurate. An environmental engineer from the Department of Environmental Conservation (hereinafter DEC) also stated in an affidavit that the D&M plan "was reasonably comprehensive in scope and adequately identified the environmental conditions which were the focus of the investigation." Therefore, we agree that defendants' Phase II report fulfilled its contractual obligation.

Nor did the transfer of the property to defendant MHC, Inc. breach the terms of the contract. Although the contract prohibits the buyer from assigning the contract without the seller's authorization, there is no comparable clause restricting the seller. Thus, EJ's assignment of the contract to MHC did not violate its terms (see, *Special Prods. Mfg. v Douglass*, 159 AD2d 847, 849). It was then necessary for EJ to also transfer the property to MHC so as to comply with the contract's requirement that the seller have title to the property. Having correctly found no breach by defendants, Supreme Court was constrained to dismiss plaintiff's tortious interference claim as well (see, *Foster Wheeler Broome County v County of Broome*, 275 AD2d 592, 595-596, *lv denied* 95 NY2d 769; *Murray v SYSCO Corp.*, 273 AD2d 760, 761).

We also agree with Supreme Court's finding that defendants' receipt of their consultant's cost estimate on February 11, 1997 triggered their 10-day termination period. Defendants' service of the termination notice on February 27, 1997 was thus beyond the time period specified in the contract (see, *Maxton Bldrs. v Lo Galbo*, 68 NY2d 373, 378), warranting the award of specific performance to plaintiff.

Supreme Court also correctly held that any lost profits resulting from the delay of the Phase II report were speculative and, therefore, not allowed as damages (see, *Kenford Co. v County of Erie*, 67 NY2d 257, 261; *Media Logic v Xerox Corp.*, 261 AD2d 727, 731). Plaintiff's sole remedies under the contract upon defendants' failure to proceed to closing were return of any deposits, with interest, and specific performance.[2] The contract is also clear that each side could terminate it upon the occurrence of numerous contingencies, and in agreeing to this limita-

---

**2.** Plaintiff's deposits were fully refunded.

tion of remedies, plaintiff should have been aware that funds spent on the project's development could be lost (*see, Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 436). Moreover, Supreme Court properly declined to award legal fees to plaintiff (*see, Chapel v Mitchell*, 84 NY2d 345, 349). While counsel fees have been awarded as damages "upon a finding that '[defendant] has *contumaciously* deprived [plaintiff] of [a] clear legal entitlement, forcing the latter into the expense of rescuing [itself] through legal action'" (*Check-Mate Indus. v Say Assoc.*, 104 AD2d 392, 393, quoting *Park S. Assoc. v Essebag*, 113 Misc 2d 1026, 1028, *affd* 126 Misc 2d 994 [emphasis in original]), Supreme Court "reluctantly" declined to make such a finding here and we perceive no abuse in its discretionary ruling.

Finally, plaintiff's repeated attempts to resurrect its fraud cause of action by motions at the close of proof and again post-judgment are unavailing for they ignore Supreme Court's initial rejection of this claim as meritless and this Court's affirmance (274 AD2d 892, *supra*; *see, Scofield v Trustees of Union Coll.*, 288 AD2d 807; *Wigand v Murphy*, 271 AD2d 896, 897). Suffice it to say that the express language of the contract disclaims any warranty by defendants or reliance by plaintiff (*see*, 274 AD2d 892, 893, *supra*). Given the contract's clear delineation of the parties' obligations, Supreme Court properly denied plaintiff's motions.

We have examined the parties' remaining contentions and find them to be either unpersuasive or moot.

Cardona, P.J., Mercure, Carpinello and Mugglin, JJ., concur. Ordered that the judgment and order are affirmed, without costs.