■ BLUE CHIP EMERALD LLC et al., Appellants, v ALLIED PARTNERS INC. et al., Respondents. [750 NYS2d 291] —Order, Supreme Court, New York County (Herman Cahn, J.), entered October 10, 2001, which granted defendants' motions to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7), unanimously reversed, on the law, with costs, the motions denied, and the complaint reinstated to the extent not previously withdrawn by stipulation.

Plaintiff Blue Chip Emerald LLC, which is owned by the three other plaintiffs bringing this action (collectively BCE), held an interest of approximately 50% in a joint venture known as Ceppeto Enterprises LLC (the Venture). The remainder of the Venture was owned by its managing member, defendant Ceppeto Holding Enterprises LLC, the principals of which are defendants Eric Hadar and Richard Hadar (collectively with the other defendants controlled by the Hadars, the Hadar defendants). The Venture's sole substantial asset was the commercial building located at One East 57th Street in Manhattan (the Property). Eight months after the formation of the Venture and its purchase of the Property, BCE sold its interest therein to the Hadar defendants for a price based on an $80 million valuation of the Property. Two weeks later, the Hadar defendants entered into a contract to sell the Property to a third party (LVMH) for $200 million.

BCE's complaint, after giving effect to a stipulation withdrawing other claims, asserts causes of action for fraud and breach of fiduciary duty against the Hadar defendants, among others, seeking to recover the additional $60 million of profit BCE allegedly would have realized if it still had held its one-half interest in the Venture when the Property was sold. BCE alleges that it was induced to sell its interest in the Venture for an unfairly low price by the Hadar defendants' misrepresentations and omissions concerning the discussions they were then conducting with third parties for the purpose of bringing about a sale or lease of the Property. Most significantly, the Hadar defendants allegedly failed to disclose and misrepresented to BCE both the true price range in which they were negotiating with LVMH for a sale of the Property and the alleged existence, as of the date BCE sold its interest, of LVMH's oral agreement to purchase the Property for $200 million. The Hadar defendants also allegedly made other misrepresentations concerning the need for renovations that led BCE to seek a quick exit from the Venture.

Defendants moved to dismiss the complaint as barred by certain representations and disclaimers BCE made in the

agreement governing the sale of its interest in the Venture (the buy-out agreement). BCE acknowledged that it was entering into the buy-out agreement without having received any "representations or warranties" from the Hadar defendants as to, inter alia, "the actual or projected value of the Property for sale or leasing or to any other matter affecting or related to the Property," with the sole exception of the disclosure that, as of the date of the agreement, the Hadar defendants had discussed the possible "operation, leasing, sale and/or valuation of the Property" with 16 third parties named on "Exhibit B" to the agreement, among whom LVMH, the ultimate purchaser, was included. BCE acknowledged that it had been "afforded an opportunity to conduct its own due diligence" with respect to the third parties listed on Exhibit B, and was "satisfied" with the information made available to it in conducting such due diligence. Further, BCE expressly disclaimed (1) all interest in any profit realized by the Hadar defendants on a future sale of the Property to any of the disclosed third parties, and (2) "any claim for fraud, breach of loyalty or fiduciary duty" arising out of their participation in the Venture, with the sole exception of a claim that the Hadar defendants sold or leased the Property to a third party not listed on Exhibit B to the extent such transaction arose from discussions held on or before the date of the buy-out agreement. The IAS court concluded that, in light of these contractual representations and disclaimers, it was required to dismiss the complaint in its entirety. We disagree.

The key fact overlooked by the IAS court is that the Hadar defendants, as coventurers and, in particular, as managing coventurers (*see Birnbaum v Birnbaum*, 73 NY2d 461, 465, citing *Meinhard v Salmon*, 249 NY 458, 468), were fiduciaries of BCE in matters relating to the Venture until the moment the buy-out transaction closed, and therefore "owe[d] [BCE] a duty of undivided and undiluted loyalty * * *" (*Birnbaum v Birnbaum*, 73 NY2d at 466, citing *Matter of Rothko*, 43 NY2d 305, 319, and *Meinhard v Salmon*, 249 NY at 463-464). Consistent with this stringent standard of conduct, which the courts have enforced with "[u]ncompromising rigidity" (*Meinhard v Salmon*, 249 NY at 464), it is well established that, when a fiduciary, in furtherance of its individual interests, deals with the beneficiary of the duty in a matter relating to the fiduciary relationship, the fiduciary is strictly obligated to make "full disclosure" of all material facts (*Birnbaum v Birnbaum, supra*). Stated otherwise, the fiduciary is obligated in negotiating such a transaction "to disclose any information that could reasonably bear on [the beneficiary's] consideration of [the fiduciary's] offer" (*Dubbs v Stribling & Assoc.*, 96 NY2d 337, 341). Absent such

full disclosure, the transaction is voidable (*see Matter of Birnbaum v Birnbaum*, 117 AD2d 409, 416).

It follows from the foregoing principles that, in negotiating the buy-out agreement, the Hadar defendants had no right to keep to themselves or misrepresent material facts concerning their efforts to sell or lease the Venture's Property, such as, for example, the prices prospective purchasers were offering to pay. If the Hadar defendants kept silent about such matters, or misrepresented them, as alleged in the complaint, the contractual disclaimers the IAS court invoked as grounds for dismissing this action would be voidable as the fruit of the fiduciary's breach of its obligation to make full disclosure. Defendants have not brought to our attention any authority, from either New York or Delaware (the state under whose law the Venture was organized), that would give effect to a waiver of a fiduciary's duty of full disclosure that the fiduciary obtained by means of its breach of that very duty, even where the party that gave the waiver was, like BCE, commercially sophisticated and advised by its own counsel. Thus, even if the disclaimers of the buy-out agreement would have negated any allegation of reliance on the Hadar defendants by a party to whom they owed no fiduciary duty (*see e.g. Citibank v Plapinger*, 66 NY2d 90, 94-95; *Danann Realty Corp. v Harris*, 5 NY2d 317, 323), such disclaimers must be deemed ineffective, on this motion addressed to the pleadings, as against BCE, to whom the Hadar defendants did owe such a duty. Similarly ineffective to bar this action at the pleading stage is the general release BCE executed in favor of the Hadar defendants and their attorneys, among others, pursuant to the buy-out agreement. In sum, a fiduciary cannot by contract relieve itself of the fiduciary obligation of full disclosure by withholding the very information the beneficiary needs in order to make a reasoned judgment whether to agree to the proposed contract.

In declining to give effect to BCE's statements in the buy-out agreement that it had been afforded an opportunity to conduct its own "due diligence" investigation into the disclosed potential purchasers of the Property, and that it was "satisfied" with the information it had obtained, we note that it cannot be said as a matter of law that BCE had at its disposal ready and efficient means for obtaining or verifying the relevant information on its own (*cf. e.g. CFJ Assoc. of N.Y. v Hanson Indus.*, 274 AD2d 892, 895 [buyer had access to real property to make its own estimate of environmental clean-up costs]; *Stuart Lipsky, P.C. v Price*, 215 AD2d 102, 103 [buyer could have reviewed financial statements to determine true condition of business]).

For example, there is no reason to believe that BCE could have learned the substance of the Hadar defendants' discussions with potential purchasers from public sources or from some easily located private source, such as the Venture's financial records. Indeed, such offers might well not have been documented at all (as the complaint alleges that the Hadar defendants specifically requested in its discussions with one company interested in leasing substantial space in the Property), or might have been reflected only in letters, e-mail, or notes that could be discovered only through a full-blown, litigation-style review of the Hadar defendants' files. Moreover, in view of the competitive nature of business and the natural presumption that BCE should look to its own partner for information about the Venture, it cannot be assumed, as the Hadar defendants suggest, that BCE had only to make phone calls to the potential purchasers identified in the buy-out agreement to learn what they were offering for the Property. The allegations of the complaint offer no basis on which to believe that the potential purchasers would have been any more forthcoming with this information than the Hadar defendants allegedly were.

BCE is also suing in this action the Hadar defendants' attorneys, the law firm of Olshan Grundman Frome Rosenzweig & Wolosky LLP and one of its partners (collectively, the Olshan defendants). Besides representing the Hadar defendants in the formation of the Venture and the negotiation of the buy-out agreement, the Olshan defendants represented the Venture in its dealings with third parties, such as the purchase of the Property and subsequent efforts to find a buyer and tenants. In substance, BCE alleges that the Olshan Defendants participated in, and aided and abetted, the Hadar defendants' alleged fraud and breach of fiduciary duty, as described above. Since the Olshan defendants make substantially the same arguments as do the Hadar defendants for affirming the dismissal of such causes of action, we reinstate the complaint against them to that extent for the reasons already discussed. BCE also asserts an eighth cause of action for legal malpractice against the Olshan defendants alone, based on the contention that, by virtue of their representation of the Venture, the Olshan defendants also had an attorney-client relationship with BCE. We reinstate this cause of action as well. On this motion addressed to the pleadings, it cannot be said as a matter of law that BCE will not be able to prove that it reasonably believed the Olshan defendants to have been acting as BCE's counsel and advisor in discussing the Venture's business with BCE, at least during the time period after the formation of the Venture and prior to

the commencement of the negotiation of the buy-out agreement. Concur—Tom, J.P., Andrias, Rubin, Friedman and Marlow, JJ.