[860 NYS2d 24]

STEVEN LITTMAN, Appellant, v JOHN W. MAGEE et al., Respondents, et al., Defendants.

First Department, June 10, 2008

## APPEARANCES OF COUNSEL

*Kennedy Johnson Gallagher LLC*, New York City (*James W. Kennedy* of counsel), and *Shapiro Forman Allen Sava & McPherson LLP*, New York City (*Stuart L. Shapiro* and *Yoram Miller* of counsel), for appellant.

*Quinn Emanuel Urquhart Oliver & Hedges, LLP*, New York City (*Sanford I. Weisburst, Michael B. Carlinsky, David L. Elsberg, Manny J. Caixeiro* and *William B. Adams* of counsel), for respondents.

## OPINION OF THE COURT

SAXE, J.P.

Plaintiff alleges that defendants wrongfully prevailed upon him to sell his minority interest in defendants' closely held corporation, and to execute in that context a broad release, by making assertions that he understood to mean that no material financial information was available beyond the limited materials already supplied to him. Since on a motion pursuant to CPLR 3211 the court must accept as true the allegations of the complaint, and give the plaintiff the benefit of any reasonable inference to be drawn from them (*see Sokoloff v Harriman Estates Dev. Corp.*, 96 NY2d 409, 414 [2001]), and particularly since defendants owed plaintiff a fiduciary duty (*see Global Mins. & Metals Corp. v Holme*, 35 AD3d 93, 98 [2006], *lv denied* 8 NY3d 804 [2007]), the motion court erred in concluding that as a matter of law plaintiff's claims are barred by the terms of the release he signed.

The facts as alleged are as follows: Plaintiff was a founding member, with an 18.7% interest, in Rockwood Realty Associates LLC (Rockwood), a closely held New York real estate investment banking LLC formed in 1996 to provide transactional and advisory services to financial institutions and public and private owners. It is asserted that over the intervening years, the two owners with the majority interest in Rockwood increasingly arranged financial transactions for their benefit and to plaintiff's detriment. In this vein, in 2003 the company sold an interest in real estate and allocated $3.6 million to plaintiff in his K-1 for

that year as his share of the earnings, creating a personal tax obligation for plaintiff of over $900,000, without paying him any cash distributions from the company to cover them, as had been the understanding of the members when the company was formed. So, in 2004, when plaintiff was approached about selling his interest back to the company, he responded positively, and negotiations began.

Plaintiff asserts that he repeatedly asked defendants to provide him with all the information he and his accountants believed necessary in order to determine the value of his interest. Initially, the information provided was limited to a Rockwood-generated balance sheet and income statement for the nine months ending in September 2004. Later, in response to plaintiff's request for further information regarding the value of Rockwood, its affiliates, and its projected value on a going forward basis, he was provided with tax returns and the combined financial statements for Rockwood and its affiliates for the years ended 2002 and 2003. The provided statements disclosed that Rockwood had eight affiliates of which it was the sole member and managing member; however, they were insufficient to analyze the value of the affiliates or their future prospects.

When plaintiff requested further information, including future financial projections, Rockwood's CFO allegedly instructed plaintiff that "no other information was or would be made available" and any further discussion was rebuffed. Further, Rockwood's CFO threatened that if plaintiff did not agree to the proposed sale, approximately $1 million in income would be allocated to him for the year 2004, while no distribution would be made to him to cover the taxes resulting from that allocation. Plaintiff emphasizes that defendants were actually in possession of financial projections but failed and refused to provide them, in order to induce and, essentially, compel him to agree to the proposed deal in the absence of the sought information.

On April 15, 2005, plaintiff entered into a membership interest transfer agreement with Rockwood, selling his interest back to the company for $2.125 million. As part of the agreement, plaintiff represented and warranted that he had "such knowledge and experience in financial and business matters such that [he] is capable of evaluating the terms and provisions of this Agreement and the other Transaction Documents." He also executed a broad omnibus general release of all claims between them.

In May 2006, Rockwood announced that DTZ Holdings, PLC had purchased a 50% interest in Rockwood for $45 million. Plaintiff commenced the instant action shortly thereafter, asserting that defendants had concealed information concerning the true value and prospects of Rockwood. Plaintiff asserted claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, constructive trust and an accounting, and sought a declaratory judgment declaring the general release void ab initio. Defendants moved to dismiss the complaint, asserting that it failed to state a cause of action and that it was barred by the release. The motion was granted, and this appeal ensued.

"[A] valid release constitutes a complete bar to an action on a claim which is the subject of the release" (*Global Mins.*, 35 AD3d at 98). But, "a general release will not insulate a tortfeasor from allegations of breach of fiduciary duty, where he has not fully disclosed alleged wrongdoing" (*H.W. Collections v Kolber*, 256 AD2d 240, 241 [1998]). And, "a release may be set aside on the traditional bases of fraudulent inducement, fraudulent concealment, misrepresentation, mutual mistake or duress" (*Global Mins.*, 35 AD3d at 98, citing *Hack v United Capital Corp.*, 247 AD2d 300, 301 [1998]). Of course, even where there is a fiduciary relationship, a plaintiff with such a claim must establish justifiable reliance on the misrepresentations or omissions at issue (*see Global Mins.* at 98). So, if he was aware of information that rendered his reliance unreasonable, or if he had enough information to create a duty to investigate further, the requisite reliance cannot be established (*id.* at 98-101; *see also Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc.*, 16 AD3d 352 [2005]). However, in this instance, and at this juncture, it was erroneous to conclude as a matter of law that plaintiff could not establish the requisite justifiable reliance to set aside the release.

Initially, defendants, as shareholders, and particularly as active managing shareholders in a closely held corporation, owed a fiduciary duty to plaintiff, a minority shareholder (*Global Mins.* at 98). Plaintiff was therefore entitled to expect defendants to disclose any information in their possession that could reasonably bear on his consideration of defendants' offer, since "when a fiduciary, in furtherance of its individual interests, deals with the beneficiary of the duty in a matter relating to the fiduciary relationship, the fiduciary is strictly obligated to make full disclosure of all material facts" (*Blue Chip Emerald v Al-*

*lied Partners*, 299 AD2d 278, 279 [2002], quoting *Birnbaum v Birnbaum*, 73 NY2d 461, 466 [1989] [internal quotation marks omitted]; *see Global Mins.* at 98, citing *Dubbs v Stribling & Assoc.*, 96 NY2d 337, 341 [2001]). In *Blue Chip Emerald*, this Court reinstated a complaint claiming fraud and breach of fiduciary duty brought by 50% partners in a joint venture which owned a commercial building in Manhattan, whose co-venturers bought out their share of the company based on an $80 million valuation, without informing the plaintiffs that they had received offers for the property at a price of $200 million. Despite the plaintiffs' disclaimer in the buyout agreement that the defendants had not made any representations to plaintiffs as to the value of the property, and their acknowledgment that the defendants had disclosed that they had discussed with 16 listed third parties a possible sale or lease of the building, this Court held that because the defendants owed a fiduciary duty of loyalty to the plaintiffs, they had an affirmative duty to disclose any information that could reasonably bear on the plaintiffs' consideration of the defendants' offer, such as the prices prospective purchasers had offered to pay (299 AD2d at 279-280).

The complaint here, giving plaintiff " 'the benefit of every possible favorable inference' " (*see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 591 [2005], quoting *Leon v Martinez*, 84 NY2d 83, 87 [1994]), alleges that defendants intentionally kept from plaintiff financial information vital to plaintiff's decision, information that he had demanded and that they had a duty to provide, while they falsely asserted that no other information was available, and pressured him to accept their terms by threatening to otherwise report the company's earnings in such a way that he would be saddled with "phantom" earnings creating an enormous personal tax liability. These assertions are sufficient to support the claim that the release should be set aside, so as to allow plaintiff to proceed with his claims for breach of fiduciary duty and fraudulent concealment.

The present matter is distinguishable from *Global Minerals*. There, this Court upheld the summary judgment dismissal of a closely held corporation's claim against one of its four shareholders, despite the fiduciary duty the defendant owed the plaintiff, because the plaintiff corporation had sufficient knowledge of questionable dealings by the former officer and shareholder, before it entered into a severance agreement with him, to put it on notice that additional inquiry was necessary. Here, the al-

legations are insufficient to warrant imposition of that duty of additional inquiry as a matter of law. Unlike *Global Minerals*, where the corporate plaintiff had been voluntarily provided with relevant information regarding the defendant and had the means and ability to investigate further into it, plaintiff here had only his own suppositions and no ready means to force defendants to turn over documents he only supposed them to have in their possession.

Defendants also argue that since plaintiff *acknowledged* that the information they provided to him was insufficient for him to properly value his interest in the company, he cannot have relied on the information they provided to establish the value of his interest in the company. However, the crux of plaintiff's claim is that they misinformed him that there were no other financial documents, forcing him to proceed with the evaluation with the limited information they made available, when they possessed other vital information. The allegations here have much in common with those in *Blue Chip Emerald*, where the managing members of a joint venture failed to inform the co-venturers of information in their possession as to the true market value of the property owned by the joint venture, and purchased the plaintiffs' interest in the venture for a fraction of its value.

In order to hold that, as a matter of law, plaintiff had, and failed to satisfy, a duty of additional inquiry, the motion court seems to have relied entirely upon plaintiff's assertion in the complaint that Rockwood's CFO told him "no other information was or would be made available." The court apparently understood these alleged words to indisputably mean "we will not make any other information available to you," indicating that defendants were in possession of additional financial information but were choosing not to reveal it to plaintiff. In contrast, however, plaintiff seems to have interpreted the CFO's quoted language as meaning that no additional information was available, and therefore that nothing else would be made available to him. In view of the court's obligation on a CPLR 3211 motion to view the allegations in the light most favorable to plaintiff and give him every favorable inference (*see AG Capital Funding Partners*, 5 NY3d at 591), it was error for the court to impose its understanding of the words at issue as it did. Moreover, to the extent the quoted language connotes the existence of some additional financial information, it would not be unreasonable to conclude, given that defendants owed a fiduciary duty to plaintiff, that such information was not material.

The sentence attributed to Rockwood's CFO simply does not in itself constitute sufficient grounds upon which to eliminate any possible claim to set aside the release on grounds of fraudulent concealment. The question of whether plaintiff can establish reasonable reliance must remain for determination at a later point in this litigation.

Nor was dismissal of the action proper based on the holding of *Danann Realty Corp. v Harris* (5 NY2d 317, 323 [1959]), where a contract's merger clause disclaiming reliance on any representations as to operating expenses and profits was held to negate the plaintiff's claim of misrepresentations as to those very subjects (*see also Rodas v Manitaras*, 159 AD2d 341, 342 [1990]), or based on *Permasteelisa, S.p.A. v Lincolnshire Mgt., Inc.* (16 AD3d 352 [2005], *supra*). Importantly, *Danann* involved an arm's length business transaction, and there was no fiduciary duty between the parties, so no obligation on the defendant in that matter to disclose all material facts bearing on the transaction.

Accordingly, the judgment of the Supreme Court, New York County (Bernard J. Fried, J.), entered March 1, 2007, dismissing the complaint in its entirety, should be reversed, on the law, with costs, the complaint reinstated, and the matter remanded for further proceedings consistent herewith.

SWEENY, McGUIRE and ACOSTA, JJ., concur.

Judgment, Supreme Court, New York County, entered March 1, 2007, reversed, on the law, with costs, the complaint reinstated, and the matter remanded for further proceedings consistent herewith.