Orchard Hotel LLC v D.A.B. Group LLC (2019 NY Slip Op 03893)





Orchard Hotel LLC v D.A.B. Group LLC


2019 NY Slip Op 03893


Decided on May 16, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 16, 2019

Gische, J.P., Kahn, Gesmer, Singh, Moulton, JJ.


9329 850044/11

[*1]Orchard Hotel LLC, Plaintiff,
v
D.A.B. Group LLC, et al., Defendants, Flintlock Construction Services LLC, Defendant-Respondent, Brooklyn Federal Savings Bank, et al., Defendants-Appellants.


O'Reilly, Marsh & Corteselli P.C., Mineola (James G. Marsh of counsel), for appellants.
Hollander Law Group, PLLC, Great Neck (Larry B. Hollander or counsel), for respondent.



Order, Supreme Court, New York County (Charles E. Ramos, J.), entered on or about May 21, 2018, which, insofar as appealed from, denied defendants Brooklyn Federal Savings Bank and State Bank of Texas's motion to dismiss defendant Flintlock Construction Services LLC's fraud and fraudulent concealment cross claims against them, unanimously affirmed, without costs.
This is a foreclosure action concerning two mortgages originated by defendant Brooklyn Federal Savings Bank (BFSB) against real property formerly owned by defendant D.A.B. Group LLC (DAB). Defendant State Bank of Texas (collectively with BFSB, the Lenders) was a participant in the loans. Defendant Flintlock Construction Services LLC was hired by DAB as the general contractor for construction on the property. Flintlock claims that BFSB fraudulently represented in an Estoppel Certificate that certain funds were available to it as payment for its work, while concealing that these funds would no longer be available after the building loan matured on March 1, 2011. As a result, Flintlock claims, it was never paid for certain work it performed.
Flintlock adequately alleges all of the elements of its fraud and fraudulent concealment claims (see generally Ross v Louise Wise Servs., Inc., 8 NY3d 478, 488 [2007]; P.T. Bank Cent. Asia, N.Y. Branch v ABN AMRO Bank N.V., 301 AD2d 373, 376 [1st Dept 2003]).
It is true that BFSB was not a signatory to the Estoppel Certificate and that the Certificate recited that the representations contained in it were made by DAB and Flintlock. However, Flintlock alleges (in its pleading and through an affidavit by its representative) that the Certificate was prepared solely by BFSB and that BFSB advised Flintlock that execution of it was a condition of being hired. These allegations are sufficient to permit an inference that BFSB effectively made the statements reflected in the Certificate.
It is not dispositive that the funds were indisputably available when the subject statement was made. The allegations that BFSB knew that Flintlock understood this representation to apply to the entire contract term and knew that the promised funds would not be available during this whole time are sufficient to permit an inference that the statement was an actionable "half-truth" (see Banque Indosuez v Barclays Bank, 181 AD2d 447, 447 [1st Dept 1992] [internal quotation marks omitted]; Sheridan Drive-In v State of New York, 16 AD2d 400, 408 [4th Dept 1962]; Restatement, Torts, § 529).
The caveat in the next paragraph of the Estoppel Certificate, that BFSB had "no obligation to provide any Advances . . . except as provided for in the Building Loan Agreement" [*2]is not sufficient to "save" the statement of fund availability, at least not at this pre-discovery stage. Although the loan agreement would have revealed the expiration date of the loans, Flintlock alleges that BFSB intentionally prevented it from gaining access to this document by wrongfully withholding it and insisting upon execution of the Certificate in a compressed time period so that Flintlock would not be able to independently obtain or review it. These allegations are sufficient to permit an inference that BFSB wrongfully prevented Flintlock from verifying whether anything in the loan documents affected its rights. The question whether Flintlock was required to insist upon copies of the loan documents or on more time for investigation cannot be decided as a matter of law at this stage.
These allegations also are sufficient to permit an inference that Flintlock justifiably relied on the Estoppel Certificate, notwithstanding its failure to read the referenced loan documents, especially in view of Flintlock's allegations that it sought assurances from BFSB regarding the sufficiency of loan funds during the contract term and understood the statement in the Estoppel Certificate to be a confirmation that the funds were sufficient (see ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1045 [2015]). Flintlock would have been required to make "additional inquiry" if it had had "hints of [a misrepresentation's] falsity" (Loreley Fin. [Jersey] No. 3, Ltd. v Morgan Stanley & Co. Inc., 146 AD3d 683, 684 [1st Dept 2017] [internal quotation marks omitted]). The Lenders do not identify any such "hints."
These allegations are also sufficient to permit an inference that BFSB had a duty to disclose information to Flintlock pursuant to the special facts doctrine (see P.T. Bank, 301 AD2d at 378). The cases cited by the Lenders are distinguishable, because they involved a party's failure to read materials provided to it or to request materials that were indisputably available (see UST Private Equity Invs. Fund v Salomon Smith Barney, 288 AD2d 87, 88-89 [1st Dept 2001]; Stuart Silver Assoc. v Baco Dev. Corp., 245 AD2d 96, 99 [1st Dept 1997]; 88 Blue Corp. v Reiss Plaza Assoc., 183 AD2d 662, 664 [1st Dept 1992]).
Flintlock's allegations are also sufficient to permit an inference that BFSB was aware that Flintlock was operating under the mistaken assumption that the funds were available throughout the contractual term, a fact that, if true, would also support a finding that BFSB owed Flintlock a duty of disclosure (see Sterling Natl. Bank v Israel Discount Bank of N.Y., 305 AD2d 184, 186 [1st Dept 2003]; Brass v American Film Tech., Inc., 987 F2d 142, 151 [2d Cir 1993]).
Contrary to the Lenders' contentions, Flintlock's allegations regarding BFSB's intent to defraud are sufficient to satisfy the heightened pleading standard applicable to fraud-based claims (see CPLR 3016[b]; IKB Intl. S.A. v Morgan Stanley, 142 AD3d 447, 450 [1st Dept 2016]). Flintlock also adequately alleged "actual pecuniary loss sustained as a direct result of the wrong" (Continental Cas. Co. v PricewaterhouseCoopers, LLP, 15 NY3d 264, 271 [2010]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 16, 2019
DEPUTY CLERK