■ JOSEPH ORLANDO et al., Respondents, v WILLIAM KUKIELKA et al., Defendants, and STEVE ROSSETTI et al., Appellants. [836 NYS2d 252]—

In an action, inter alia, to recover damages for fraud and negligent misrepresentation, the defendants Steve Rossetti and Revenue Stream, Inc., appeal from an order of the Supreme Court, Westchester County (Rudolph, J.), entered December 21, 2005, which denied their motion for summary judgment dismissing the complaint insofar as asserted against them.

Ordered that the order is reversed, on the law, with costs, and the motion of the defendants Steve Rossetti and Revenue Stream, Inc., for summary judgment dismissing the complaint insofar as asserted against them is granted.

The defendants William Kukielka, Glenn Taus, and Jeffrey Bakshi (hereinafter collectively the sellers), who were the officers and shareholders of five family entertainment centers (hereinafter the businesses), employed the defendants Steve Rossetti and Revenue Stream, Inc. (hereinafter together the broker), to sell their businesses. A "business listing agreement" between the sellers and the broker gave the broker the exclusive right to sell each of the businesses. The business listing agreement also contained the financial information of the sellers' businesses, such as annual gross revenue and expenses, which the sellers had provided to the broker. A provision within each business listing agreement provided that the sellers, by signing it, were representing that the financial information was correct and would confirm as much upon the request of any buyer. The

broker placed an advertisement in the New York Times to which the plaintiffs responded. The broker instructed the plaintiffs to view the broker's Web site, which contained a disclaimer confirming that the information contained on it had been obtained from the broker's clients, and that the broker made "no representation or warranty as to the accuracy thereof." After visiting the businesses, the plaintiffs signed a "prospective buyer agreement," which provided that "any representations made by the seller are not guaranteed and that the Prospective Buyer [s] will not hold [the broker] responsible for any misrepresentation [s] made by the seller, lessor, or any third party." Shortly thereafter, the broker presented the plaintiffs with the business listing agreement containing the financial information of the sellers' businesses. After a period of negotiation, the sellers accepted the plaintiffs' offer in the sum of $2.425 million. The terms were memorialized in a "business binder agreement" which provided for a 14-day due diligence period. During that period, the plaintiffs conducted an independent audit of the businesses, which was based on documents and information the sellers provided to them. The broker was later provided with a copy of the plaintiffs' audit, as well as the plaintiffs' revised versions of the financial information as contained in the business listing agreements. The audit revealed that the net profit generated by the businesses was not the sum of $1 million, as indicated in the business listing agreements, but rather was approximately the sum of $500,000. In particular, as to one business, "collection sheets" that the sellers had provided to the plaintiffs showed that the gross revenue was approximately $75,000 less than represented in the business listing agreements.

Despite the discrepancies, the plaintiffs stated that they "felt comfortable" relying on the financial information contained in the business listing agreements and on the broker's Web site, as well as verbal representations the broker made, such as statements that the businesses were a "great opportunity," "very profitable," and generated a $1 million operating profit for the sellers. As a result, a revised "business binder agreement" was executed reducing the sale price to the sum of $2.15 million, representing approximately twice the "perceived net income" of the businesses. Four months later, a contract of sale solely between the plaintiffs and the sellers was executed that contained, inter alia, a provision stating that the listing agreements containing the financial information of the businesses were "delivered to [the broker and the plaintiffs]," that they represented a "true and correct historical statement," and that the sellers acknowledged that the plaintiffs would not otherwise

have proceeded with the transaction had they contained false or incorrect information.

Once the plaintiffs began operating the businesses, they were unable to realize the profits represented in the business listing agreements despite their best efforts. Subsequently, they commenced this action against the sellers and the broker alleging, inter alia, causes of action sounding in fraud and negligent misrepresentation. The Supreme Court denied the broker's motion for summary judgment dismissing the complaint insofar as asserted against it. We reverse, and grant the motion.

The essential elements of a cause of action sounding in fraud are a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury (*see Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996]; *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 406-407 [1958]; *Urquhart v Philbor Motors, Inc.*, 9 AD3d 458, 459 [2004]). A cause of action alleging negligent misrepresentation likewise requires, inter alia, that reliance be reasonable (*see Pappas v Harrow Stores*, 140 AD2d 501, 504 [1988]).

Here, the disclaimers in the prospective buyer agreement and on the broker's Web site, when read in conjunction with the business listing agreements, put the plaintiffs on notice that the sellers had provided the financial information contained therein to the broker, and that the broker had not verified that information (*see Danann Realty Corp. v Harris*, 5 NY2d 317, 320-322 [1959]; *Evans v Israeloff, Trattner & Co.*, 208 AD2d 891, 892 [1994]).

Furthermore, "if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him [or her] of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the representation, he [or she] must make use of those means, or he [or she] will not be heard to complain that he was induced to enter into the transaction by misrepresentations" (*Curran, Cooney, Penney v Young & Koomans*, 183 AD2d 742, 743 [1992], quoting *Schumaker v Mather*, 133 NY 590, 596 [1892]; *see UST Private Equity Invs. Fund v Salomon Smith Barney*, 288 AD2d 87, 88 [2001]). Here, the plaintiffs' reliance on the broker's alleged misrepresentations concerning the financial information contained in the business listing agreements was unreasonable as a matter of law (*see Curran, Cooney, Penney v Young & Koomans, supra* at 744). The plaintiffs had the means to

determine the truth of the financial representations contained in the broker's business listing agreements and, as evidenced by its own audit, did so. Yet, despite the substantial discrepancies between what their audit revealed and what was set forth in the business listing agreements, they relied on the latter. In doing so, the plaintiffs "willingly assumed the business risk that the facts may not have been as represented" (*id.*).

We further note that the plaintiffs were not ordinary investors, but sophisticated businesspersons who must be charged with awareness that the broker was to receive a 10% commission from the sellers based on the sale price of the businesses. While we recognize that the question of whether a party's reliance is reasonable is generally left for the trier of fact (*see Talansky v Schulman*, 2 AD3d 355, 361 [2003]), what the plaintiffs seek in this instance is an implausible finding that such sophisticated businesspersons, in assuming a major proprietary interest in a commercial enterprise, and incurring a heavy financial obligation, did so on information that the broker provided to them despite their own evidence to the contrary (*see Most v Monti*, 91 AD2d 606 [1982]; *see also Abrahami v UPC Constr. Co.*, 224 AD2d 231, 234 [1996]; *Evans v Israeloff, Trattner & Co., supra*). Under the circumstances, the plaintiffs' reliance was unreasonable as a matter of law for this additional reason. Accordingly, the Supreme Court should have granted the broker's motion for summary judgment dismissing the complaint insofar as asserted against it. Schmidt, J.P., Goldstein, Fisher and Lifson, JJ., concur.