[884 NYS2d 144]

STEPHANIE DALY, Appellant, v TARA KOCHANOWICZ et al., Respondents, et al., Defendants.

Second Department, August 18, 2009

80

## APPEARANCES OF COUNSEL

*Jennielena Rubino*, Mount Vernon, for appellant.

*Michele A. Luzio*, Mamaroneck, for respondents.

*L'Abbate, Balkan, Colavita & Contini, LLP*, Garden City (*Scott E. Kossove* and *Daniel M. Maunz* of counsel), for Christopher Abate and another, defendants.

## OPINION OF THE COURT

DICKERSON, J.

The verified complaint in this action describes an alleged scheme to defraud the plaintiff in connection with her purchase of a house in Westchester County. Specifically, the plaintiff alleges that, in or about April 2006, she retained the services of the defendant CS Realty & Relocations Services, Inc. (hereinafter CS Realty), in connection with the purchase of the subject property, located in Mamaroneck, and owned by the defendants Tara Kochanowicz and Robert Janowitz (hereinafter the sellers). The defendant Christopher Abate of CS Realty showed the plaintiff the subject property, which was listed for sale by the defendant Kathleen Spadaro of the defendant Spadaro Real Estate, Ltd. (hereinafter Spadaro RE).

Prior to entering into a contract of sale, the plaintiff hired a private inspector to inspect the subject property. The inspector discovered some evidence of water intrusion in the basement. According to the plaintiff, the inspector inquired of the sellers regarding any history of water problems. The sellers denied ever having any water problems in the house. Further, the plaintiff stated, upon information and belief, that she made verbal inquiry to the sellers as to whether they had experienced any history of water problems in the subject property. Again, the sellers denied having any water problems. The plaintiff claims that the sellers knew that their representation to her was false, and that they made it to induce her into purchasing the subject property. The plaintiff claimed that, in reliance on the sellers' material misrepresentation to her and to the private home inspector, the plaintiff entered into a contract of sale on May 12, 2006. On July 6, 2006, the plaintiff closed on the purchase of the subject property.

On November 6, 2006, the plaintiff received a document from the Federal Emergency Management Agency (hereinafter FEMA) providing information regarding flood insurance loss payment history with regard to the subject property. The document listed a payout for a flood that occurred on September 8, 2004. The plaintiff asserted, upon information and belief, that the sellers intentionally failed to disclose this information to her as a part of the scheme to defraud her and to induce her into purchasing the subject property.

On March 2, 2007, and April 15, 2007, as a result of two separate severe storms, the subject property became "catastrophically flooded," forcing the plaintiff to relocate and causing severe damage to the subject property and to the contents thereof.

## The Complaint

In the first cause of action asserted against all defendants, the plaintiff alleges that the defendants knew or should have known of the property's history of severe flooding. She claimed that the defendants acted in concert to deceive her into believing that the property did not have such a history. The plaintiff alleged that she justifiably relied on the defendants' misrepresentations, and had been injured as a result. The plaintiff claimed that the defendants' actions, or lack thereof, constituted a pattern of behavior exhibiting moral turpitude. The plaintiff sought damages in an amount to be determined at trial, as well as punitive and exemplary damages in the sum of not less than $10,000,000.

In the second cause of action asserted against all defendants, the plaintiff essentially reiterated the contentions set forth in the first cause of action.

In the third cause of action asserted against the defendants Abate and CS Realty, the plaintiff alleged that these defendants, as her broker, owed her a fiduciary duty, but that they allegedly failed to advise her of the subject property's history. The plaintiff claimed that these defendants breached their fiduciary duty to her by failing to act with due diligence on the subject property's flood history, and by failing or refusing to provide information responsive to her requests regarding the subject property's history. The plaintiff again asserted that these defendants' actions constituted a pattern of behavior exhibiting moral turpitude. The plaintiff contended that, as a result of these defendants' actions, the plaintiff lost her employment and suffered other damages in an amount to be determined at trial.

She sought punitive and exemplary damages in an amount not less than $10,000,000.

In the fourth cause of action asserted against all defendants, the plaintiff claimed that she was entitled to "an account[ing] . . . of all monies and proceeds paid at closing in connection with the purchase of the subject property, including . . . any payments made to the Sellers, mortgage brokers, title company, and legal fees."

### Motion To Dismiss

The sellers and their real estate brokers, Spadaro and Spadaro RE, moved to dismiss the complaint pursuant to CPLR 3211 (a) (1), (5) and (7) and 3016 (b). In support of their motion, these defendants submitted, among other documents, an affidavit of the defendant seller Tara Kochanowicz.

In her affidavit, Kochanowicz stated that she and Janowitz, her husband, had owned the subject property. In April 2006 they listed the property for sale through Spadaro RE. The listing sheet indicated that flood insurance may be required by a lender.

On April 24, 2006, the sellers accepted the plaintiff's offer to purchase the property for $485,000. Prior to signing the contract of sale, the plaintiff hired a private inspector to inspect the premises.

Kochanowicz was not home during this inspection. According to Kochanowicz, the inspector did not make verbal inquiries to her regarding any history of water problems in the lower level of the premises. She stated that she did not make any statements to the plaintiff's inspector, and that she did not make any verbal or written statements to the plaintiff concerning the condition of the house or, specifically, the basement, prior flooding, or water infiltration. More specifically, Kochanowicz stated that she "did not say to Plaintiff or to her inspector any words to the effect that we never had water problems in the basement."

Kochanowicz claimed that her attorney showed her and Janowitz the plaintiff's proposed third rider to the contract of sale, in which the plaintiff sought a representation by them that, at the time of closing, the basement would be free of seepage. The sellers refused to make that representation, and this item was stricken from the third rider.

Kochanowicz claimed that several provisions of the contract of sale conclusively established that the plaintiff's claims were

barred by the provisions in the contract establishing that the plaintiff did not rely on statements by the sellers. In this regard, she observed that paragraph 11 (c) of the contract stated that "[e]xcept as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this Contract shall survive Closing." In support of her contentions in this regard, Kochanowicz also relied on paragraph 12 of the contract, set forth fully below.

Kochanowicz claimed that she and Janowitz relied on the plaintiff's representations that she was fully aware of the physical condition and state of repair of the house based on her own inspection and investigation; that she entered into the contract based solely upon her inspection and investigation; that she did not rely on any information, data, statements or representations, written or oral, as to the physical condition or state of repair of the house made by the sellers or their representatives; and that she accepted the house "as is." Kochanowicz stated that the plaintiff in no way indicated that she was relying on any alleged verbal statements by the sellers to the effect that they had no history of water problems in the lower level of the house.

Kochanowicz also observed that the plaintiff acknowledged that her private inspector discovered some evidence of water intrusion in the basement. Thus, she claimed that the risk of water intrusion was not information within the peculiar knowledge of the sellers. This discovery was made prior to the date on which the plaintiff entered into the contract of sale. Thus, according to Kochanowicz, it would be unreasonable for the plaintiff to rely on an alleged statement by the sellers that there was no history of water problems where her inspector noted evidence of water infiltration, the house is in a flood zone, and the survey shows a river flowing through the back of the property.

In support of her contentions, in addition to paragraphs 11 and 12 of the contract, Kochanowicz also relied on paragraph 28 (a), set forth below. She also relied on paragraphs 4 (a), 12, 14, and 17 of the first rider, also set forth fully below.

### The Contract Of Sale

The contract of sale executed on May 13, 2006, contains the following relevant terms.

As previously noted, subparagraph (c) of paragraph 11, entitled "Seller's Representations," states that "[e]xcept as otherwise expressly set forth in this contract, none of Seller's

covenants, representations, warranties or other obligations contained in this Contract shall survive Closing."

Paragraph 12 of the contract, entitled "Condition of Property," states,

"Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same 'as is' in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16 [e]), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing."

Subparagraph (a) of paragraph 28, entitled "Miscellaneous," states, "[a]ll prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract."

### The First Rider

Paragraph 4 (a) of the first rider states that

"the Premises are to be transferred subject to: (a) Any state of facts shown on the survey by Richard Spinelli dated April 10, 1991 (hereinafter the Spinelli survey), which an accurate survey may dis-

> close provided title is not rendered unmarketable thereby and, further to any state of facts which a survey inspection may disclose, unless same shall render title unmarketable."

That survey depicted the Mamaroneck River inside the northern boundary line of the property, and that the State maintains an easement through the property's back yard to access the river.

Paragraph 12 of the first rider, entitled "Delivery of Deed," states,

> "It is specifically understood and agreed by the parties hereto that the acceptance and delivery of the deed of conveyance at the time of closing of title hereunder, without specific written agreement, which by its terms shall survive such closing of title, shall be deemed to constitute full compliance by Sellers with the terms, covenants, and conditions of this contract on their part to be performed and, with the laws governing Seller's obligation to provide a completed Property Condition Disclosure Statement."

Paragraph 14 of the first rider, entitled "Modification," states, "This rider, together with the main contract, constitutes the entire agreement between the parties and may not be modified except by a writing, executed by both Purchaser and Seller."

Paragraph 17 of the first rider provides that

> "[t]he sellers will give upon the transfer of title, a credit of Five Hundred ($500.00) Dollars against the agreed upon purchase price in lieu of the deliverance of a Property Condition Disclosure Statement. Any Property Condition Disclosure Statement previously provided to Purchaser from any source is withdrawn and shall be of no force and effect. Purchaser hereby accepts the Five Hundred ($500.00) Dollar credit in lieu of the Statement and accepts the Premises 'as is.' This paragraph 17 shall survive closing."

### The Third Rider

In paragraph 4 (b) of the third rider, what is apparently a proposed provision requiring the basement to be free from seepage at closing is crossed out.

Plaintiff's Opposition: The Inspector's Report

In support of her opposition to the motion, the plaintiff submitted, inter alia, a copy of page 40 of an inspector's report pertaining to the subject property. This page is not signed or dated. Under the heading "Questions and Answers about Past Water Intrusion," the report states, in part, "When asked over the phone if there was ever any water in the lower level areas, the home owner stated that there has not been any water."

The report recommended that the plaintiff "[a]sk neighbors what happened during hurricane Floyd and who got water in their homes and who did not. Do this prior to either the closing of contract or prior to the signing of contract." It also recommended consulting with local officials and asking about the wetland map and the 100-year flood plain map "and how it affects this property" prior to signing the contract.

## DISCUSSION

### Duty To Disclose The History Of Water Intrusion

The plaintiff is under the mistaken impression that the sellers and their real estate brokers, Spadaro and Spadaro RE, had an affirmative duty to disclose the water intrusion history of the subject property. "New York adheres to the doctrine of caveat emptor and imposes no liability on a seller for failing to disclose information regarding the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller which constitutes active concealment" (*Simone v Homecheck Real Estate Servs., Inc.*, 42 AD3d 518, 520 [2007]). An exception to this doctrine arises from statutory disclosure obligations should the seller fill out and make available to the buyer a Property Condition Disclosure Statement (*see* Real Property Law §§ 462, 465; *Simone v Homecheck Real Estate Servs., Inc.*, 42 AD3d at 520-521 ["(w)hen a seller makes a false representation in a Disclosure Statement, such a representation may be proof of active concealment . . . (T)he alleged false representations by the sellers in the Disclosure Statement support a cause of action alleging fraudulent misrepresentation in that such false representations may be proof of active concealment"]; *Ayres v Pressman*, 14 Misc 3d 145[A], 2007 NY Slip Op 50397[U], *2 [2007] [any misrepresentation in the Property Condition Disclosure Statement provides a separate cause of action for defrauded home buyers entitling plaintiff "to recover his actual damages arising out of the material misrepresenta-

tion set forth on the disclosure form, notwithstanding the 'as is' clause contained in the contract of sale"]; *Calvente v Levy*, 12 Misc 3d 38 [2006]; *McMullen v Propester*, 13 Misc 3d 1232[A], 2006 NY Slip Op 52093 [U] [2006]; *see also Ricciardi v Frank*, 163 Misc 2d 337 [1994], *mod* 170 Misc 2d 777 [1996] [discussing the obligations of home inspectors to discover and reveal evidence of water intrusion in basements]). Of course, the sellers did not fill out and make available to the plaintiff a Property Condition Disclosure Statement, opting instead to give the plaintiff a $500 credit (*see* Real Property Law § 465 [1]).

## Fair Warning

Notwithstanding the provisions in the contract of sale (to be discussed below) and the significance of the sellers' refusal to answer any of the questions in the Property Condition Disclosure Statement (e.g. "No rotting or water damage, no flooding, drainage or grading problems that resulted in standing water on any portion of the property, no seepage in the basement that resulted in standing water" [*Simone v Homecheck Real Estate Servs.*, Inc., 42 AD3d at 519]), or agree to that portion of plaintiff's third rider which promised "that at closing . . . the basement will be free of seepage," the plaintiff was put on fair notice that the house was subject to water intrusion, perhaps of a serious nature. First, the plaintiff's home inspector noted evidence of water intrusion and recommended that plaintiff talk to the neighbors and contact knowledgeable local officials. Second, the plaintiff was informed that the sale of the property was subject to the Spinelli survey, which showed that the Mamaroneck River was inside the northern boundary line of the property. Third, the plaintiff was advised that New York State maintains an easement through the property's back yard to access the river. The reality of all this is that the plaintiff was warned in several ways of a potentially serious water intrusion problem, yet she failed to perform even minimum due diligence in investigating the subject property's water intrusion history.

## Fraud/Collusion/Active Concealment

The plaintiff failed to adequately state a cause of action to recover damages for fraud or collusion against any of the defendants other than, arguably, the sellers. However, the doctrine of caveat emptor and provisions of the contract of sale bar the plaintiff's claims based on fraud and collusion.

"A motion to dismiss made pursuant to CPLR 3211 (a) (1) will fail unless the documentary evidence that forms the basis

of the defense resolves all factual issues as a matter of law, and conclusively disposes of the plaintiff's claim" (*Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d 34, 37 [2006]; *see McCue v County of Westchester*, 18 AD3d 830, 831 [2005]; *see also Held v Kaufman*, 91 NY2d 425, 430-431 [1998]; *Leon v Martinez*, 84 NY2d 83, 88 [1994]; *Trade Source v Westchester Wood Works*, 290 AD2d 437, 438 [2002]; *Teitler v Pollack & Sons*, 288 AD2d 302 [2001]). "Moreover, a motion to dismiss made pursuant to CPLR 3211 (a) (7) will fail if, taking all facts alleged as true and according them every possible inference favorable to the plaintiff, the complaint states in some recognizable form any cause of action known to our law" (*Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d at 37; *see e.g. AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 590-591 [2005]; *Leon v Martinez*, 84 NY2d at 87-88; *Hayes v Wilson*, 25 AD3d 586 [2006]; *Marchionni v Drexler*, 22 AD3d 814 [2005]; *Rinaldi v Casale*, 13 AD3d 603, 604-605 [2004]).

## Failure To State A Fraud Cause Of Action

" 'The essential elements of a cause of action for fraud are "representation of a material existing fact, falsity, scienter, deception and injury" ' " (*Ross v DeLorenzo*, 28 AD3d 631, 636 [2006], quoting *New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995]; *see Jablonski v Rapalje*, 14 AD3d 484, 487 [2005]). With regard to the plaintiff's reliance on the alleged misrepresentation, the plaintiff must establish not only that he or she actually relied on the misrepresentation, but that this reliance was reasonable or justifiable (*see McMorrow v Dime Sav. Bank of Williamsburgh*, 48 AD3d 646, 647-648 [2008]; *Dong Sheng Lu v Equitable Co.*, 6 AD3d 650, 651 [2004]; *Stuart Silver Assoc. v Baco Dev. Corp.*, 245 AD2d 96, 98 [1997]; *see also Shovak v Long Is. Commercial Bank*, 50 AD3d 1118, 1120 [2008]; *Orlando v Kukielka*, 40 AD3d 829, 831 [2007]). Additionally, CPLR 3016 provides that, in pleading a cause of action to recover damages for fraud, the circumstances constituting the alleged wrong must be stated in detail (*see* CPLR 3016 [b]).

Relevant to a cause of action to recover damages for fraud or collusion, the plaintiff alleged in the complaint that, upon her inspector's discovery of evidence of water intrusion in the basement of the subject property, he inquired of the sellers as to whether there was any history of water problems in the property's lower levels. She asserted that, in response to those

inquiries, "[t]he Sellers denied ever having water problems in the house," that the Sellers "knew that [this] representation to Plaintiff was false," and that they advanced the representation "in order to induce Plaintiff into purchasing the subject property." The plaintiff claimed that she relied on this material misrepresentation and entered into the contract of sale. The plaintiff further alleged that the sellers "intentionally failed to disclose the aforementioned information to Plaintiff as part of a scheme to defraud Plaintiff and to induce Plaintiff into purchasing the subject property." In the first cause of action, the plaintiff alleged that the "Defendants acted in concert with one another in order to deceive Plaintiff into believing that the subject property did not have a history of flooding or damages as [a] result thereof." She further alleged that she "justifiably relied on the Defendants' misrepresentations in connection with the purchase of the subject property" and that she had been injured as a result. Many of these allegations are made "[u]pon information and belief." The only specific misrepresentation alleged in the complaint is that "[t]he Sellers denied ever having water problems in the house."

■ Again, in pleading a cause of action to recover damages for fraud, the circumstances constituting the alleged wrong must be stated in detail (*see* CPLR 3016 [b]). Under this standard, allegations of fraud against any defendants other than the sellers are not pleaded with sufficient particularity pursuant to CPLR 3016 (b), as there are no allegations concerning specific misrepresentations, who made such misrepresentations, and when they were made (*see Black Car & Livery Ins., Inc. v H&W Brokerage, Inc.*, 28 AD3d 595, 596 [2006]; *Dumas v Fiorito*, 13 AD3d 332, 333 [2004]; *Andre Strishak & Assoc. v Hewlett Packard Co.*, 300 AD2d 608, 610 [2002]).

■ With regard to the allegations pertaining to the sellers, the complaint does not contain any specific allegations concerning who actually made the misrepresentation or when it was made. Although an action to recover damages for fraud may be dismissed for failure to plead the cause of action with sufficient particularity (*see* CPLR 3016 [b]),

> "the standard is simply whether the allegations are 'set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of' and this rule of pleading must 'not [be] interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be "impossible to

state in detail the circumstances constituting a fraud" ' " (*Caprer v Nussbaum*, 36 AD3d 176, 202 [2006], quoting *Lanzi v Brooks*, 43 NY2d 778, 780 [1977]).

Thus, under this standard, the complaint's allegations against the sellers are arguably sufficient to inform them of the incidents complained of.

## No Reliance Shown

■ However, even considering the allegations of the complaint to be true and according the plaintiff the benefit of every favorable inference (*see Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d at 37), the plaintiff's reliance on any representation by the sellers that the subject property had no history of water problems was not reasonable or justifiable. The plaintiff expressly states in the complaint that she "hired a private inspector to inspect the subject property, prior to entering into contract with Sellers," and that "the private inspector discovered some evidence of water intrusion in the basement of the subject property." In light of the plaintiff's private inspector's discovery of evidence of water intrusion in the basement of the subject property, made known to the plaintiff prior to closing, any reliance on alleged statements by one of the sellers that they never had "water problems in the house" was unreasonable and unjustifiable. Accordingly, in light of the absence of reasonable or justifiable reliance, the plaintiff failed to state a cause of action to recover damages for fraud or collusion against the sellers (*see generally Shovak v Long Is. Commercial Bank*, 50 AD3d at 1120; *McMorrow v Dime Sav. Bank of Williamsburgh*, 48 AD3d at 647-648; *Orlando v Kukielka*, 40 AD3d at 831; *Dong Sheng Lu v Equitable Co.*, 6 AD3d at 651; *Stuart Silver Assoc.v Baco Dev. Corp.*, 245 AD2d at 98).

## Documentary Evidence/Caveat Emptor/Peculiar Knowledge

"New York adheres to the doctrine of caveat emptor and imposes no duty on the seller or the seller's agent to disclose any information concerning the premises when the parties deal at arm's length, unless there is some conduct on the part of the seller or the seller's agent which constitutes active concealment" (*Jablonski v Rapalje*, 14 AD3d 484, 485 [2005]; *see Platzman v Morris*, 283 AD2d 561, 562 [2001]; *Glazer v LoPreste*, 278 AD2d 198 [2000]; *London v Courduff*, 141 AD2d 803, 804 [1988]). " 'If however, some conduct (i.e., more than mere

silence) on the part of the seller rises to the level of "active concealment," a seller may have a duty to disclose information concerning the property' " (*Jablonski v Rapalje*, 14 AD3d at 485, quoting *Bethka v Jensen*, 250 AD2d 887, 888 [citations omitted]). "To maintain a cause of action to recover damages for active concealment, the plaintiff must show, in effect, that the seller or the seller's agents thwarted the plaintiff's efforts to fulfill his [or her] responsibilities fixed by the doctrine of caveat emptor" (*Jablonski v Rapalje*, 14 AD3d at 485).

■ The plaintiff claims in her brief on appeal that the arm's length nature of the transaction at issue was negated when Kochanowicz personally invited the plaintiff to her home, stated that lawyers would not be necessary, and denied the existence of any flooding problems. Neither this argument nor these alleged facts were advanced before the Supreme Court, but are improperly raised for the first time on appeal. Accordingly, they will not be considered (*see e.g. Shickler v Cary*, 59 AD3d 700 [2009]).

## Due Diligence Responsibilities

■ The plaintiff failed to state a cause of action to recover damages for active concealment. The complaint does allege that the sellers expressly denied that there were ever any "water problems in the house." However, other than this denial, the complaint contains no additional allegations of conduct that would have thwarted the plaintiff's efforts to fulfill her responsibilities pursuant to the doctrine of caveat emptor (*compare Platzman v Morris*, 283 AD2d 561 [2001] *with Jablonski v Rapalje*, 14 AD3d 484 [2005]).

In *Platzman v Morris* (283 AD2d at 562), the plaintiffs purchased a house from the defendants. Prior to closing, the plaintiffs visited the house and observed that it contained three kitchens, including one in the basement, one on the first floor, and one on the second floor (*id.*). The sellers informed the plaintiffs that the kitchen in the basement was not legal, but that the kitchen on the second floor was legal (*id.*). After the closing, the plaintiffs were informed that the additional kitchens were both in violation of the zoning laws (*id.*). In their complaint, the plaintiffs alleged that the sellers actively concealed the fact that the second-floor kitchen was illegal (*id.*). In affirming the order granting a motion to dismiss the complaint insofar as asserted against the sellers, this Court found that the record contained no evidence that the plaintiffs "made any ef-

fort to investigate the legality of the kitchens despite that they were aware of, and questioned the legality of, the second-floor kitchen" (*id*. at 562). Further, this Court stated that the existence of the second-floor kitchen, and its illegality, were not facts within the sellers' peculiar knowledge (*id*.). This Court also relied on the terms of the contract of sale, which provided that the plaintiffs "were fully aware of the condition of the premises based upon their own inspection and investigation, and not based upon any information or representations, written or oral, made by the sellers" (*id*. at 562-563). Accordingly, this Court concluded that the plaintiffs could not maintain an action to recover damages for fraud (*id*. at 563).

The sellers here allegedly represented to the plaintiff that there had never been any water problems in the house. Like the defendants' representations in *Platzman v Morris*, it is undisputed that this alleged representation was, in fact, false. However, also analogous to the plaintiffs in *Platzman v Morris*, there is no evidence in the record to suggest that the plaintiff here made any attempt whatsoever, prior to closing, to independently research whether the area experienced significant flooding (*id*.; *see Glazer v LoPreste*, 278 AD2d 198, 199 [2000]). Additionally, while the plaintiffs in *Platzman v Morris* may have had a suspicion as to the legality of the second-floor kitchen, prompting them to raise the question, here, the plaintiff, prior to closing, was affirmatively informed by the inspector she hired that there was evidence of water intrusion in the basement of the subject property.

Moreover, significant flooding in the area would, in some measure, be a matter of public record (*cf. Rozen v 7 Calf Cr., LLC*, 52 AD3d 590, 592-593 [2008] [in opposition to certain defendants' establishment of entitlement to judgment as a matter of law, the plaintiffs failed to raise a triable issue of fact as to whether or not those defendants concealed a release and thwarted their efforts to discover it, since the release was readily ascertainable and obtainable from the public records]; *Matos v Crimmins*, 40 AD3d 1053, 1055 [2007] [notwithstanding the plaintiffs' contention that the existence of certain easements was concealed by the presence of certain items in the backyard, including a swing-set and a fenced-in dog run, the plaintiffs conceded that the existence of the easements was readily ascertainable from the public record]).

## Absence Of Peculiar Knowledge

The plaintiff claims that the flooding conditions were a matter of which the sellers had peculiar knowledge. However, in support of her contention, she relies on claims not before the Supreme Court and in support of which no evidence appears in the record. Specifically, she claims, for the first time on appeal, that the FEMA document setting forth the payment for the 2004 flood is not a public document and that she could not have discovered it. Additionally, the plaintiff claims, again for the first time on appeal, to have acquired a videotape of a news broadcast pertaining to flooding in Mamaroneck in 2004, in which Kochanowicz is allegedly interviewed by a reporter discussing the losses she sustained as a result of the flooding. Even if it were properly before this Court, a public broadcast of a local television station's news program is decidedly not a matter within the peculiar knowledge of the sellers.

■ In any event, "the misrepresentation allegedly relied upon by the plaintiff was not a matter within the peculiar knowledge of the defendant. The fact that the house was exposed to flooding could have been, and indeed was, [later] discovered by the plaintiff through the exercise of due diligence" (*Rigney v McCabe*, 43 AD3d 896, 896 [2007]; *see Glazer v LoPreste*, 278 AD2d at 199).

## Contractual Provisions

This Court, in *Rigney v McCabe*, observed that the plaintiff's causes of action were predicated on alleged oral representations made by the defendant before the conveyance, and observed that, as such, they were barred by the specific disclaimer provisions contained in the contract of sale (43 AD3d at 896; *see Danann Realty Corp. v Harris*, 5 NY2d 317, 320 [1959]). Similarly, in *Platzman v Morris*, "the contract contained a provision that the plaintiffs were fully aware of the condition of the premises based upon their own inspection and investigation, and not based upon any information or representations, written or oral, made by the sellers" and accordingly, the plaintiffs could not claim fraud (283 AD2d at 562-563).

As set forth above, the contract here contained provisions virtually identical to those in *Platzman v Morris*, establishing that the plaintiff

> "is fully aware of the physical condition and state of repair of the Premises and of all other property

included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same 'as is' in their present condition and state of repair."

 The contract of sale contains numerous additional provisions, set forth fully above, consistent with the foregoing. These provisions bar the plaintiff's claims here (*see Rigney v McCabe*, 43 AD3d at 896; *Platzman v Morris*, 283 AD2d at 562-563).

## Breach Of Fiduciary Duty—Plaintiff's Agent

The plaintiff claims that Abate and CS Realty, as her real estate agents, breached their fiduciary duty to her in that they knew or should have known about the flooding conditions in and around the subject property. Although we note that this claim appears to be irreconcilable with the plaintiff's claim that knowledge of the propensity for flooding in the area was within the peculiar knowledge of the sellers, the plaintiff claims that these defendants were bound to disclose information pertaining to the flooding in this area, but failed to do so, thereby breaching their fiduciary duty to her.

"In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct" (*Kurtzman v Bergstol*, 40 AD3d 588, 590 [2007]; *see Ozelkan v Tyree Bros. Envtl. Servs., Inc.*, 29 AD3d 877, 879 [2006]). "In New York, it is well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal" (*Dubbs v Stribling & Assoc.*, 96 NY2d 337, 340 [2001]; *see Friedler v Palyompis*, 44 AD3d 611, 612 [2007]). Where a plaintiff asserts a cause of action to recover damages for breach of fiduciary duty, "the circumstances constituting the wrong shall be stated in detail" (CPLR 3016 [b]; *see Black Car & Livery Ins., Inc. v H&W Brokerage, Inc.*, 28 AD3d at 596).

In the third cause of action, the plaintiff alleged that Abate and CS Realty owed her a fiduciary duty. As stated above, "it is

well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal" (*Dubbs v Stribling & Assoc.*, 96 NY2d at 340; *see Friedler v Palyompis*, 44 AD3d at 612). With regard to the specific misconduct allegedly committed by these defendants, the plaintiff alleged that Abate and CS Realty "breached their duty to Plaintiff by (i) failing to conduct due diligence on the flood history of the subject property and the surrounding area; and (ii) failing or refusing to provide information responsive to requests made by Plaintiff."

However, even assuming the allegations of the complaint to be true and according the plaintiff the benefit of every favorable inference (*see Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d at 37), the plaintiff failed to allege that she sustained "damages that were directly caused by the defendant's misconduct" (*Kurtzman v Bergstol*, 40 AD3d at 590; *see Ozelkan v Tyree Bros. Envtl. Servs., Inc.*, 29 AD3d at 879). As set forth above, the plaintiff acknowledged in the complaint that she hired a private inspector to inspect the subject property prior to entering into the contract of sale, and that the private inspector discovered evidence of water intrusion in the basement of the subject property. While the complaint alleges that both the private inspector and the plaintiff inquired of the sellers as to whether the subject property had any history of water problems, and the sellers denied any such history, the complaint unequivocally establishes that the plaintiff, as a result of her inspection and investigation, was made aware of the evidence of water intrusion in the basement of the subject property. Again, the plaintiff alleged that the information these defendants failed to disclose, which constituted a breach of their fiduciary duty, pertained to "the history of the subject property and the propensity of the surrounding area to flood in a severe rainstorm." However, it is not clear how the plaintiff could have sustained damages directly caused by these defendants' failure to inform her of the possibility of flooding if she was aware of water intrusion in the basement of the subject property. Accordingly, even assuming the allegations of the complaint to be true and according the plaintiff the benefit of every favorable inference (*see Shaya B. Pac., LLC v Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 38 AD3d at 37), in light of the fact the plaintiff acknowledges that she was aware of evidence of water intrusion in the basement of the subject property, the complaint fails to allege "damages that were

directly caused by the defendant's misconduct" (*Kurtzman v Bergstol*, 40 AD3d at 590; *see Ozelkan v Tyree Bros. Envtl. Servs., Inc.*, 29 AD3d at 879). Therefore, the plaintiff failed to state a cause of action against Abate and CS Realty to recover damages for breach of fiduciary duty.

It may be noted that Abate and CS Realty rely on *Friedler v Palyompis* (44 AD3d 611 [2007]), in which this Court, while acknowledging the fiduciary relationship between the plaintiffs and their real estate brokers, affirmed the dismissal of the complaint insofar as asserted against them. However, unlike this motion to dismiss, that case involved a motion for summary judgment, where the defendants had the opportunity to establish, for example, that "they neither knew of the subject premise's structural defects nor made any representations regarding the structural integrity of the premises to the plaintiffs" (*id.* at 612). In any event, we note that, in that case, this Court determined,

> "Further, if the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations. Here, the plaintiffs' reliance on any alleged misrepresentations made by these defendants concerning the structural integrity of the subject premises or the qualifications of the home inspector was unreasonable as a matter of law. That these broker defendants had a fiduciary relationship with the plaintiffs, is irrelevant to their alleged liability, since there is no evidence in the record that they knew of any structural defects in the subject premises, or had any reason to doubt the home inspector's qualifications" (*id.* [citations and internal quotation marks omitted]).

### Breach Of Fiduciary Duty—Sellers' Agent

The plaintiff failed to state a cause of action against the defendants Spadaro and Spadaro RE to recover damages for breach of fiduciary duty. The complaint does not allege that those defendants owed a fiduciary duty to the plaintiff, and any

such allegation would be unsupportable (*cf. Dubbs v Stribling & Assoc.*, 96 NY2d at 340 ["it is well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of *the principal*" (emphasis added)]). To the extent that the plaintiff seeks to impose an affirmative duty on Spadaro and Spadaro RE based on conduct constituting active concealment (*see generally Glazer v LoPreste*, 278 AD2d at 198-199 [New York imposes no duty on either the seller or the seller's agent to disclose any information concerning the premises unless there is a confidential or fiduciary relationship between the parties or some conduct on the part of the seller which constitutes active concealment; a buyer has the duty to satisfy himself as to the quality of his bargain]), as discussed at length above, other than the sellers' alleged denial of water problems, there is no evidence whatsoever to support the conclusion that those defendants engaged in any active concealment.

### Unjust Enrichment

The plaintiff asserts on appeal for the first time that the defendants were unjustly enriched by the subject real estate transaction. The plaintiff's contention is not properly before this Court. In her complaint, the plaintiff did not purport to set forth a cause of action to recover damages for unjust enrichment. Nor did she argue before the Supreme Court that she stated such a cause of action.

In any event, the plaintiff did not set forth facts in the complaint which would constitute a cause of action to recover damages for unjust enrichment (*see generally AHA Sales, Inc. v Creative Bath Prods., Inc.*, 58 AD3d 6, 19 [2008]). Accordingly, she failed to state a cause of action to recover damages for unjust enrichment.

Accordingly, the order of the Supreme Court is affirmed.

SANTUCCI, J.P., FLORIO and COVELLO, JJ., concur.

Ordered that the order is affirmed, with one bill of costs to the respondents.