In an action, inter alia, to recover damages for fraud, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Queens County (Satterfield, J.), entered October 13, 2009, as denied that branch of their cross motion which was for summary judgment dismissing the complaint.
Ordered that the order is reversed insofar as appealed from, on the law, with costs, and that branch of the defendants’ cross motion which was for summary judgment dismissing the complaint is granted.
In July 2005 the plaintiff entered into two contracts with the defendant Kisslev-Mazel Realty, LLC (hereinafter KMR), to purchase two adjacent parcels of real property located in Queens (hereinafter the properties) for the purpose of developing the properties into either two- or three-family attached and semidetached dwellings for resale. The plaintiff paid the sums of $3,412,500 for one of the lots and $962,500 for the other. The contracts specified that they were entered into after a “full investigation” and that the plaintiff had not relied on any statement or representation not embodied in the contracts. Moreover, the contracts provided that “[acceptance of the deed by [the plaintiff] shall be deemed full and complete performance and discharge of every agreement and obligation of [KMR] hereunder.” Section 13 of the contracts also provided what would occur in the event that the premises were taken by condemnation or eminent domain prior to the closing.
*662 The closing occurred on October 14, 2005. The plaintiff demolished the existing structure and commenced construction after the New York City Department of Buildings approved the construction drawings on May 8, 2006, and issued building permits during the period of July 28, 2006, through October 16, 2006. More than one year after the closing, the plaintiff received a petition dated January 4, 2007, from the City of New York to acquire the properties through condemnation. At that time, the plaintiff had completed more than 50% of the construction of its proposed residential subdivision and had expended approximately $2,460,000 to do so.
According to the City’s petition, the New York City Planning Commission (hereinafter Planning Commission) approved the application of the New York City Department of Environmental Protection (hereinafter DEP) and the New York City Department of Citywide Administrative Services, which had been filed on December 10, 2002, seeking the acquisition of the properties for the construction of facilities required for the Rockaway Water Pollution Control Plant so that the existing municipal sewage disposal plant could be enlarged. The Planning Commission held a public hearing for the two applications on January 5, 2005; there were no speakers, and the hearing was closed. Both matters then appeared on the Planning Commission’s February 2, 2005, calendar, at which time they were approved. The Planning Commission’s resolution stated that the DEP performed a study of the potential environmental impact the development would have on the surrounding area, and a negative declaration was issued on September 11, 2002. Thereafter, on September 20, 2004, the application was certified as complete by the New York City Department of City Planning and was then referred to Community Board 14 and the Queens Borough President. Community Board 14 held a public hearing on the City’s application on November 9, 2004, and adopted a resolution recommending the approval of the application. Following Community Board 14’s resolution, on December 3, 2004, the Queens Borough President issued a recommendation in favor of the application with two conditions, which were then responded to by the DEP by letter in January 2005.
The Planning Commission’s resolutions approving the applications were filed with the Office of the Speaker, City Council, and the Queens Borough President in accordance with section 197-d of the New York City Charter. The City’s petition also recited that, on April 13, 2005, the Deputy Mayor approved the acquisition and directed the Corporation Counsel to institute acquisition proceedings.
*663 As a result of the City’s petition, by order dated February 16, 2007, the Supreme Court vested title to the properties with the City as of March 23, 2007. The plaintiff then filed a notice of claim dated April 2, 2007, against the City for damages stemming from the City’s taking of the properties and for damages equivalent to the full value of the construction project. Thereafter, in December 2008 the plaintiff and the City entered into stipulations of settlement regarding the plaintiffs condemnation valuation claim whereby the City agreed to pay the plaintiff the sum of $10,900,000 for the loss the plaintiff suffered in connection with the City’s acquisition of the subject properties through the condemnation proceeding. In a final decree dated December 9, 2008, the Supreme Court, after reviewing the stipulations, found the terms to be just.
Prior to resolving its claim against the City, in October 2007 the plaintiff commenced this action against KMR and its individual members alleging, in effect, that the defendants committed fraud in failing to disclose the City’s proposed condemnation proceeding prior to the parties’ entry into the contracts and that the defendants had a duty to disclose such plans. The plaintiff moved for summary judgment on certain causes of action. The defendants cross-moved, inter alia, for summary judgment dismissing the complaint. The Supreme Court denied the plaintiffs motion and that branch of the defendants’ cross motion which was for summary judgment dismissing the complaint. The defendants appeal.
The Supreme Court should have granted that branch of the defendants’ cross motion which was for summary judgment dismissing the complaint. The defendants established their prima facie entitlement to judgment as a matter of law by demonstrating, inter alia, that they made no affirmative representation as to the status of the property, did not thwart the plaintiffs efforts to discover the City’s plans to seek condemnation of the properties, and that the information regarding the condemnation was a matter of public record which the plaintiff could have reasonably discovered with due diligence (see Jablonski v Rapalje, 14 AD3d 484, 488 [2005]; Country World v Imperial Frozen Foods Co., 186 AD2d 781 [1992]; cf. Rozen v 7 Calf Cr., LLC, 52 AD3d 590, 592 [2008]). Here, the contracts specifically state that the plaintiff did not rely on any statements by KMR in entering into the contracts. Moreover, the affidavit of the plaintiffs president submitted in support of its motion established that its claim of “fraud” consisted solely of the defendants having been in contact with the City regarding the condemnation of the properties for months prior to entering *664 into the contracts of sale with the plaintiff and their failure to inform the plaintiff of the planned condemnation. Additionally, other than ordering a title search for the properties, the plaintiffs president failed to set forth what efforts, if any, were made to ascertain information about the properties prior to executing the contracts.
“New York adheres to the doctrine of caveat emptor and imposes no duty on the seller or the seller’s agent to disclose any information concerning the premises when the parties deal at arm’s length, unless there is some conduct on the part of the seller or the seller’s agent which constitutes active concealment” (Matos v Crimmins, 40 AD3d 1053, 1054 [2007], quoting Jablonski v Rapalje, 14 AD3d at 485; see Laxer v Edelman, 75 AD3d 584, 585 [2010]; Daly v Kochanowicz, 67 AD3d 78, 87 [2009]; Simone v Homecheck Real Estate Servs., Inc., 42 AD3d 518, 520 [2007]). “The mere silence of the seller, without some act or conduct which deceived the purchaser, does not amount to a concealment that is actionable as a fraud” (Rozen v 7 Calf Cr., LLC, 52 AD3d at 593; see Daly v Kochanowicz, 67 AD3d at 91; Simone v Homecheck Real Estate Servs., Inc., 42 AD3d at 520). “To maintain a cause of action to recover damages for active concealment, the plaintiff must show, in effect, that the seller or the seller’s agents thwarted the plaintiffs efforts to fulfill [its] responsibilities fixed by the doctrine of caveat emptor” (Jablonski v Rapalje, 14 AD3d at 485; see Laxer v Edelman, 75 AD3d 584, 585 [2010]; Commander Terms., LLC v Commander Oil Corp., 71 AD3d 623 [2010]; Daly v Kochanowicz, 67 AD3d at 92).
Furthermore, given the fact that the City had to publish its intent to seek condemnation of the properties, held public hearings regarding the condemnation, and filed the Planning Commission’s resolutions approving the applications with the Office of the Speaker of the City Council and the Queens Borough President in accordance with section 197-d of the New York City Charter, the knowledge of the condemnation was not a matter within the peculiar knowledge of the defendants and, therefore, could have been discovered through the exercise of due diligence (see Daly v Kochanowicz, 67 AD3d at 94).
In opposition, the plaintiff failed to raise a triable issue of fact (see McPherson v Husbands, 54 AD3d 735, 736 [2008]; Matos v Crimmins, 40 AD3d at 1055). Santucci, J.P., Angiolillo, Dickerson and Austin, JJ., concur. [Prior Case History: 2009 NY Slip Op 32421(U).]