Northland E., LLC v J.R. Militello Realty, Inc. (2018 NY Slip Op 05078)





Northland E., LLC v J.R. Militello Realty, Inc.


2018 NY Slip Op 05078


Decided on July 6, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 6, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, DEJOSEPH, AND NEMOYER, JJ.


234 CA 17-01558

[*1]NORTHLAND EAST, LLC, NORTHLAND WEST, LLC, DUTTON, LLC, AND MICHAEL W. SWEENEY, PLAINTIFFS-APPELLANTS,
v
J.R. MILITELLO REALTY, INC., AND NORDEL II, LLC, DEFENDANTS-RESPONDENTS. 






JUSTIN S. WHITE, WILLIAMSVILLE, FOR PLAINTIFFS-APPELLANTS.
ZDARSKY, SAWICKI & AGOSTINELLI LLP, BUFFALO (GUY J. AGOSTINELLI OF COUNSEL), FOR DEFENDANT-RESPONDENT J.R. MILITELLO REALTY, INC. 
HURWITZ & FINE, P.C., BUFFALO (EARL K. CANTWELL OF COUNSEL), FOR DEFENDANT-RESPONDENT NORDEL II, LLC. 


 Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (Henry J. Nowak, Jr., J.), entered April 19, 2017. The order and judgment granted the motion of defendant Nordel II, LLC to dismiss the complaint against it and granted the motion of defendant J.R. Militello Realty, Inc. for summary judgment dismissing the complaint against it and for summary judgment on its counterclaim. 
It is hereby ORDERED that the order and judgment so appealed from is unanimously modified on the law by denying the motion of defendant J.R. Militello Realty, Inc., reinstating the complaint against it, and vacating the fourth and fifth decretal paragraphs, and as modified the order and judgment is affirmed without costs.
Memorandum: Pursuant to a real estate purchase agreement (contract), plaintiffs agreed to sell their properties to defendant Nordel II, LLC (Nordel), which is a wholly-owned subsidiary of the Buffalo Urban Development Corporation (BUDC). It is undisputed that plaintiffs engaged defendant J.R. Militello Realty, Inc. (JRMR) as their real estate broker to market and sell the subject properties, and that JRMR's president, James R. Militello, acted on JRMR's behalf. After plaintiffs executed the contract but before they closed on the sale of the properties with Nordel, they commenced this action, alleging that JRMR breached its fiduciary duty to them, that Nordel knowingly induced JRMR's breach of that duty, and that both defendants engaged in a scheme to defraud plaintiffs into selling the properties "for far below market value." Both defendants denied the general allegations of the complaint, and JRMR asserted a counterclaim seeking to recover its commission from the sale of the properties, which were ultimately sold to Nordel for a combined price of $4,400,000.
Nordel filed a CPLR 3211 motion to dismiss, contending that the complaint failed to state a cause of action against Nordel, was refuted by documentary evidence, i.e., the contract, and failed to plead fraud with the requisite particularity (see CPLR 3211 [a] [1], [7]; see also CPLR 3016 [b]). JRMR thereafter filed a CPLR 3212 motion for summary judgment, seeking dismissal of the complaint against it as well as judgment on its counterclaim. Supreme Court granted both motions. Although we conclude that Nordel's motion was properly granted for reasons stated by the court in its written decision, we agree with plaintiffs that the court erred in granting JRMR's motion (hereafter, motion). We therefore modify the order and judgment accordingly.
Addressing plaintiffs' causes of action against JRMR, we conclude that, even if JRMR established as a matter of law that it was entitled to dismissal of the breach of fiduciary duty and [*2]fraud causes of action, plaintiffs raised triable issues of fact sufficient to defeat the motion (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
"To state a claim for breach of fiduciary duty, a plaintiff must allege that the defendant owed him [or her] a fiduciary duty, that the defendant committed misconduct, and that the plaintiff suffered damages caused by that misconduct" (NRT N.Y., LLC v Morin, 147 AD3d 589, 589 [1st Dept 2017], lv denied 30 NY3d 901 [2017]; see Daly v Kochanowicz, 67 AD3d 78, 95 [2d Dept 2009]). With respect to the first element, "it is well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal" (Dubbs v Stribling & Assoc., 96 NY2d 337, 340 [2001]; see Sonnenschein v Douglas Elliman-Gibbons & Ives, 96 NY2d 369, 374 [2001]). There is thus no dispute that JRMR owed plaintiffs a fiduciary duty.
We conclude that, contrary to defendants' contention, plaintiffs raised triable issues of fact whether Militello, while acting on behalf of JRMR, committed misconduct. It is well settled that, "because of a broker's fiduciary duties, he [or she] has the affirmative duty not to act for a party whose interests are adverse to those of the principal, unless he [or she] has the consent of the principal given after full knowledge of the facts . . . Accordingly, he [or she] cannot act as agent for both seller and purchaser of property in a real estate transaction" (Matter of Goldstein v Department of State, Div. of Licensing Servs., 144 AD2d 463, 464 [2d Dept 1988]). "Where a broker's interests or loyalties are divided due to . . . [the] representation of multiple parties, the broker must disclose to the principal . . . the material facts illuminating the broker's divided loyalties" (Dubbs, 96 NY2d at 340; see Goldstein, 144 AD2d at 464). Indeed, "[a] failure to disclose any interest tending to influence the [broker] . . . constitutes a breach of [the broker's] fiduciary obligation and precludes [the broker] from recovering for services rendered" (John J. Reynolds, Inc. v Snow, 11 AD2d 653, 653-654 [1st Dept 1960], affd 9 NY2d 785 [1961] [emphasis added]).
Here, in opposition to the motion, plaintiffs submitted multiple emails between Militello and Peter M. Cammarata, who was the president of the buyer, Nordel, and who signed the contract as the president of BUDC. In those emails, Militello discussed his efforts to "box [plaintiffs] into a corner" and have them "make a deal" to sell the properties for substantially less than Militello had opined that they were worth. Thus, despite his representation of plaintiffs, Militello clearly aligned himself with Nordel's interests in those emails, as demonstrated by Militello's use of the pronouns "we" and "our" when discussing with Nordel the plans to deal with plaintiffs. For example, Militello proposed to Cammarata that "[w]e pay" a certain sum for the properties, opined that "we will make a deal with [plaintiffs] at that number," and suggested to Cammarata what "our message" to plaintiffs should be. Militello even complained to Cammarata that plaintiffs were "stringing us along" (emphasis added).
We also note that Militello, i.e., the plaintiffs' agent, suggested that Nordel should consider purchasing other property, stating, "Would we consider [other] property as [an] alternative to [plaintiffs' property]." Although JRMR established that it did not formally represent Nordel, the emails between Militello, as JRMR's president, and Cammarata, as Nordel's president, raise triable issues of fact whether JRMR, through Militello's actions and statements, assumed "the role of agent for [Nordel] in the purchase of [plaintiffs' properties]" (Douglas Elliman LLC v Tretter, 84 AD3d 446, 448 [1st Dept 2011], affd 20 NY3d 875 [2012]). In such a situation, JRMR "would be considered a dual agent, with a duty to disclose [its] divided loyalties and obtain the parties' consent thereto" (id. at 448-449). On the record before this Court, no such disclosure was made, and no consent was obtained.
With respect to damages, we conclude that plaintiffs raised triable issues of fact whether they suffered damages that were
" directly caused by [Militello's] misconduct' " (Daly, 67 AD3d at 96). There is no dispute that plaintiffs did not commence this action until after the contract between plaintiffs and Nordel was executed and that they did, in fact, sell the properties to Nordel. Contrary to JRMR's contention, the fulfillment of that contract does not establish the absence of damages. BUDC's own appraiser estimated that the value of the properties was at least $160,000 more than the sale price.
We further conclude that the court erred in granting JRMR summary judgment dismissing [*3]the third cause of action, for fraud, against it. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff[,] and damages" (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009]; see Carlson v American Intl. Group, Inc., 30 NY3d 288, 310 [2017]). Even assuming, arguendo, that JRMR met its initial burden with respect to the fraud cause of action, we conclude that plaintiffs raised triable issues of fact sufficient to defeat that part of the motion.
Specifically, plaintiffs' evidence raised issues of fact whether Militello made misrepresentations to them concerning the value of their properties and the willingness of Nordel to purchase different property, and whether Militello knew of the falsity of those statements and made them with the intent to induce plaintiffs' reliance on them. Plaintiffs also submitted evidence raising triable issues of fact whether they justifiably relied on Militello's misrepresentations and suffered damages as a result.
Contrary to JRMR's contention, the general language of the merger clause in the contract does not preclude plaintiffs' cause of action for fraud in the inducement of that contract. JRMR was not a party to that contract, and we note that, even if the contract's merger clause would protect a nonparty to the contract, it is well settled that "a general merger clause is ineffective . . . to preclude parol evidence that a party was induced to enter the contract by means of fraud" (Manufacturers Hanover Trust Co. v Yanakas, 7 F3d 310, 315 [2d Cir 1993]). Here, the merger clause contained in paragraph 16.1 is a general merger clause, i.e., an " omnibus statement that the written instrument embodies the whole agreement' " and thus does not "disclaim[] the existence of or reliance upon specified representations" and does not preclude plaintiffs' claim that they were "defrauded into entering the contract in reliance on [certain alleged] [mis]representations" (id., quoting Danann Realty Corp. v Harris, 5 NY2d 317, 320 [1959]; see Lieberman v Greens at Half Hollow, LLC, 54 AD3d 908, 909 [2d Dept 2008]; Stephens v Sponholz, 251 AD2d 1061, 1061 [4th Dept 1998]; cf. Legum v Russo, 133 AD3d 638, 640 [2d Dept 2015]).
We further conclude that the court erred in granting that part of JRMR's motion with respect to its counterclaim, for recovery of the real estate commission, and granting judgment to JRMR. "During the process of facilitating a real estate transaction, the broker owes a duty of undivided loyalty to its principal . . . If this duty is breached, the broker forfeits his or her right to a commission, regardless of whether damages were incurred" (Douglas Elliman LLC, 84 AD3d at 448 [emphasis added]; see P. Zaccaro, Co., Inc. v DHA Capital, LLC, 157 AD3d 602, 603 [1st Dept 2018], lv denied — NY3d &mdash, 2018 NY Slip Op 71851 [2018]; NRT N.Y., LLC, 147 AD3d at 589). Inasmuch as there are triable issues of fact whether JRMR, through Militello's actions, breached its duty of undivided loyalty to plaintiffs, there are triable issues of fact whether it forfeited its right to a commission regardless of whether plaintiffs were, in fact, damaged.
We reject JRMR's contention that plaintiffs ratified the sale price or are estopped from asserting their causes of action against JRMR based on the fact that they eventually closed on the properties pursuant to their contract with Nordel. "Ratification is the act of knowingly giving sanction or affirmance to an act that would otherwise be unauthorized and not binding" (21 NY Jur 2d, Estoppel, Ratification and Waiver, § 94 [emphasis added]). Plaintiffs commenced this action after they had executed the contract with Nordel but before the closing on the sale and the transfer of title of the properties. Thus, at the time of the sale, there was a legally binding contract and, had plaintiffs not completed the sale, they may have been liable for breach of contract. Moreover, plaintiffs had a legal obligation to mitigate their damages (see Holy Props. v Cole Prods., 87 NY2d 130, 133 [1995]; see generally Wilmot v State of New York, 32 NY2d 164, 168 [1973]). We thus conclude that plaintiffs' sale of the properties to Nordel was not a ratification of the sale price.
With respect to estoppel, "[a] court of equity may preclude a party from denying a material fact which he [or she] has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them, thereby suffering foreseeable injury and damages . . . The doctrine of equitable estoppel must be applied with great caution, however, when dealing with realty" (Bergner v Kick, 85 AD2d 911, 911-912 [4th Dept 1981], affd 56 NY2d 795 [1982] [emphasis added]). Contrary to JRMR's contention, there are triable issues of fact whether plaintiffs should be estopped from denying that the value [*4]of their properties was no greater than $4.4 million. Although plaintiffs contracted to sell the properties at that price and JRMR acted upon that contract, there are triable issues of fact whether JRMR was "excusably ignorant" of the true value of the property and whether JRMR had a right to rely upon plaintiffs' action in signing the contract with Nordel. We thus conclude that the court erred in granting JRMR's motion.
Entered: July 6, 2018
Mark W. Bennett
Clerk of the Court